**Robert ANDERSON, et al.,**
**Plaintiffs–Appellees,**

**v.**

**MONTGOMERY WARD & CO., INC., et**
**al., Defendants–Appellants.**

No. 87–1297.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1987.

Decided July 25, 1988.

Bridget Arimond, Davis, Barnhill & Galland, Chicago, Ill., for plaintiffs-appellees.

Ronald S. Cooper, Steptoe & Johnson, Washington, D.C., for defendants-appellants.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

This interlocutory appeal presents an important question of statutory construction under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. We must decide whether discharged employees of Montgomery Ward & Co. (Montgomery Ward) may participate in an age discrimination suit against Montgomery Ward even though the employees failed to file timely charges with the Equal Employment Opportunity Commission (EEOC), but when other employees, subject to the same alleged discriminatory practice, filed timely charges.[1] The district court concluded that individuals need not file timely EEOC charges when at least one other similarly situated plaintiff has filed a timely charge. For the reasons set forth in the following opinion, we affirm.

I

Facts

This appeal involves seven of 39 plaintiffs who have filed suit against Montgomery Ward alleging age discrimination in violation of ADEA.[2] The plaintiffs were management employees of Montgomery Ward with between 10 and 43 years of service. All of the plaintiffs, including the seven appellees, filed charges with the EEOC alleging that they had been discriminated against because of their age. However, the charges of the seven appellees were untimely under ADEA because they were not filed within 300 days of the alleged discriminatory actions. At least 27 charges, 23 of which were timely, contained allegations that Montgomery Ward had engaged in class-based age discrimination;

---

1. ADEA's charge-filing requirement is codified at 29 U.S.C. § 626(d). It reads:

    No civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission. Such a charge shall be filed—

    (1) within 180 days after the alleged unlawful practice occurred; or

    (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred, or within 30 days after receipt by the individual of notice of termination of proceedings under state law, whichever is earlier.

2. The seven appellees who failed to file timely charges are: Catherine Breen, Ann Brown, Robert Collins, Victor Morris, Norman Nelson, Jerry Perkins, and William Sokolick.

some of the charges mentioned names of other employees who also allegedly had been discriminated against.[3] Montgomery Ward admits that it was aware of an "on-slaught" of charges and that it stopped efforts to conciliate the matter with the EEOC once it became aware of the number of charges it was facing.[4]

3. *See, e.g.,* Charge of Robert Anderson ("Other older employees were also affected. ... I believe Respondent's efforts have been to eliminate older employees and replace them with younger employees."); Charge of Ronald Aspgren ("It is my belief that Respondent is attempting to remove its older employees and replace them with young employees. Other older employees (over age 50) have been terminated. Some are Kenneth Gould age 54, Jerry Seckinger age 56, Edward Condon age 51, Richard Watson age 60."); Charge of Albert Dapolito ("To my knowledge, approximately 25 other employees have been affected and all are over 40.... As far as I know, most of the older employees let go in Chicago have been replaced by younger employees. I believe that Respondent has attempted to displace its older employees and replace them with younger employees.").

Charge of Dolores Foster ("Respondent consistently either fails to promote, terminates or forces early retirement upon its employees age 40 and above. Some of whom, already have filed with the EEOC."); Charge of Larry Houtz ("My former employer has engaged in a discriminatory pattern of forcing employees over forty years old to voluntary resign their positions. Six Buyers and the Merchandise Controller in the Lawn and Garden department have been eliminated solely on the basis of their age and longevity with the company."); Charge of Alfred Lemke ("My circumstances were one in a series of actions in which respondent established a pattern of forcing older employees into early retirement and replacing them with younger individuals hired from outside the Company. Among the numerous other managers coerced into retirement were: Clarence Kuhn, age 57, former National Merchandise Manager, Linen Department. Al Dapolito, former National Manager, Drapery Department. Ralph Johnson, age 55, former National Merchandise manager, Hardware Department.").

Charge of Gerald Seckinger ("Other older employees ... have been terminated. Some are: J. Vernon Lloyd (law department) age 62; Lawrance Joselit age 57, Catalog Division."); Charge of John Wolfe ("To my knowledge, approximately 25 employees have been affected and all were similarly treated and are over 40 years of age.").

The other employees who filed charges that alleged class-wide discrimination were: Ann Brown, Edwin Casebier, Robert Collins, Thomas Dean, Frances Gasperowich, Allyn Iverson, Clarence Kuhn, David Lightfoot, Victor Morris, Sterling Nelson, Jerry Perkins, Edgar Putnam, George Saymon, Frederick Tama, Robert Thomas, Allan Tomlinson, Howard Turpin, Eugene Wardynski, and Raymond Wasarhaley.

4. Mr. Burton Reiter, a senior labor relations attorney for Montgomery Ward, testified in his deposition about Montgomery Ward's response to the EEOC charges. He testified:

Q: All right. After the charges were received and sent down to your office in whatever manner they were sent down to your office, what did you do physically next with those charges?
A: Let's set a time frame. The early charges that came in before the onslaught we would attempt to investigate internally....
    ....
After the charges became more frequent and we became aware of your firm's representation of several of the charging parties and the likelihood that more charging parties would come into the fold and be represented by you, very honestly, Mr. Barnhill, we filed appearance letters with the EEOC and did not to any degree internally investigate later file charges. We maintained a file of the charge, and that was basically it.
    ....
... So we felt that if these plaintiffs, these charging parties, were going to retain counsel, as we had evidence that they—some had and some were going to, then we felt the appropriate decision would be to let counsel sue, and matters would then be handled in litigation, and the full investigation would then be handled in litigation through discovery.
Q: So you made a policy decision at some point that you would neither contribute to the fact-finding nor conciliate with the EEOC over these charges arising out of the corporate complex, is that correct?
A: I'm not sure that I can state—it was my policy. It wasn't a company policy decision. But that was the policy that, if you want to use that term, which was decided upon by myself and Miss Gilfillan in our responsibility for defending the company.
Q: You as the company's lawyers made that decision, is that right?
A: That's correct.
Q: Did you believe at that time that Ward's had some obligation to conciliate?
A: No.
Q: Did you believe at that time that Ward's had some obligation to furnish factual matters to the EEOC in response to their investigation?
A: We always differ with EEOC as to what our obligations are. I felt no obligation.
Joint Appendix at 88–97 (Deposition of Burton Reiter at 9–19).

The plaintiffs filed suit in November 1982. The suit was styled a multiple plaintiff joint action,[5] not a "representative action" (ADEA's version of a class action).[6] On May 10, 1985, after the appellees had participated in the lawsuit, including discovery, for several years, Montgomery Ward moved for summary judgment against them alleging that their participation in the suit was barred by their failure to file a timely EEOC charge. On February 18, 1986, the district court granted Montgomery Ward's motion, ruling that all plaintiffs must have filed timely charges unless other timely charges were expressly representative *and* the subsequent lawsuit was a representative action. *Anderson v. Montgomery Ward & Co.*, No. 82 C 7277, mem. op. (N.D.Ill. Feb. 18, 1986) [hereinafter *Ward I*]; R. 387. The plaintiffs then moved for reconsideration and for leave to file a third amended complaint to convert their action to a representative action. On April 14, 1986, the district court granted the plaintiffs' motion for reconsideration and issued a second memorandum opinion allowing those plaintiffs who had not filed timely charges to "piggyback" on the timely charges of other plaintiffs. *Anderson v. Montgomery Ward & Co.*, 631 F.Supp. 1546 (N.D.Ill.1986) [hereinafter *Ward II*]. The court also allowed the plaintiffs to amend their complaint to plead a representative action. On January 7, 1987, the district court denied Montgomery Ward's motion for reconsideration of *Ward II*, and then certified for interlocutory appeal those portions of the *Ward II* order "which address the charge-filing and statute of limi-

tations issues." *Anderson v. Montgomery Ward & Co.*, 650 F.Supp. 1476 (N.D.Ill. 1987) [hereinafter *Ward III*]. Montgomery Ward then filed this appeal, which this court accepted for review on February 17, 1987.

## II

### District Court Opinions

#### A. *Ward I*

In *Ward I*, the district court concluded that every plaintiff in an ADEA action must comply with ADEA's charge-filing requirement unless two criteria are satisfied. First, those plaintiffs who did file timely charges must expressly purport to represent other claimants. And second, the ADEA action must be an "opt-in" representative action, as prescribed in section 216(b) of FLSA.[7] The court noted that in this case "[n]one of the plaintiffs who filed EEOC charges did so purporting to represent other employees similarly situated, and nothing in plaintiffs' complaint suggests that this action is brought by some former employees on behalf of others." *Ward I* at 3. Therefore, the court concluded that each plaintiff had to file a timely charge of discrimination with the EEOC.

Although many plaintiffs had alleged a pattern of discrimination in their timely charges, the court rejected the appellees' contention that Montgomery Ward was on notice that claims by other employees were likely. The court said that the "law permits an employer to assume that he faces

---

5. Rule 20(a) of the Federal Rules of Civil Procedure provides in pertinent part:

   All persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

6. ADEA's provisions generally are enforced in accordance with certain procedures in the Fair Labor Standards Act (FLSA), including the FLSA procedure for representative actions codified at 29 U.S.C. § 216(b). 29 U.S.C. § 626(b). The FLSA representative action procedure requires that each plaintiff file a written consent

with the court "opting-in" to the action. Section 216(b) provides in pertinent part:

   An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

7. *See supra* note 6.

only those complaints that have been filed," and that "[a]llowing the conversion of individual actions into class actions long after litigation has begun, as plaintiffs would have the court do here, would require employers to treat all discrimination suits as class actions, a result that would be both wasteful and unfair." *Id.* at 4.

### B. *Ward II*

In *Ward II*, the district court reversed its earlier decision that plaintiffs could not piggyback on the timely charges of other employees unless those charges were expressly representative. The court changed its earlier position because of the similarities between ADEA and Title VII. Under Title VII, the court noted, an expressly representative EEOC charge is not a prerequisite to joinder by plaintiffs who failed to file timely charges. *Ward II*, 631 F.Supp. at 1549. According to the district court, Title VII case law suggests that, as long as one plaintiff has filed a valid EEOC charge, and the claims of the other plaintiffs arose out of similar discriminatory treatment in the same time frame, piggybacking is permissible. *Id.* Because the charge-filing requirements of Title VII and ADEA have similar purposes, the court concluded that Title VII law should be applied in the ADEA context.

The court also determined that employers would not be seriously prejudiced if courts allowed untimely claimants to piggyback despite the absence of an expressly representative charge. The court said that employers should anticipate claims from employees similarly situated to an employee who filed the charge. In addition, the court commented that ADEA is a remedial statute, and that its provisions must be construed generously to favor those whom Congress intended the law to benefit. Because the language of ADEA does not require an expressly representative EEOC charge, the district court determined that the law should not be construed narrowly so as to impose such a requirement.

The court determined that the administrative charge need not state explicitly that the parties contemplated filing a representative action. However, the court did not alter its earlier determination that, when suit is finally brought in the district court, piggybacking is permissible only if the suit is filed as a representative action. The court then concluded that Montgomery Ward would not be unduly prejudiced by allowing the plaintiffs to amend their complaint into a representative suit. The court said that this amendment would simply allow the seven appellees who failed to file timely charges to become parties to the litigation. This amendment would not be prejudicial, the court said, because Montgomery Ward had conducted discovery with respect to their claims for several years.

In sum, the court ruled that an expressly representative EEOC charge is not required to allow piggybacking, but that those appellees who did not timely file can only piggyback into a representative suit. Because Montgomery Ward was not prejudiced by allowing the action to be amended into a representative suit, the court permitted the amendment.

### C. *Ward III*

In *Ward III*, the district court denied Montgomery Ward's motion for reconsideration of *Ward II*. Montgomery Ward argued that *Ward II* was in error because none of the timely charges had purported to be brought on behalf of other plaintiffs. The court rejected this argument, reiterating its holding in *Ward II* that Title VII law is applicable when interpreting the charge-filing requirement of ADEA. The court then said that "several plaintiffs filed timely EEOC charges sufficient to notify both the EEOC and Montgomery Ward that the company may have been engaging in systematic age discrimination." *Ward III*, 650 F.Supp. at 1478. In the court's view, those charges satisfied all the purposes of ADEA's charge-filing requirement. Moreover, the court noted that ADEA must be interpreted liberally to further its remedial purposes, and that it would be improper to require *pro se* litigants to use hypertechnical language in order to allege a class-based charge. *Id.* at

1479. The court also rejected Montgomery Ward's argument that the court had erred in allowing the plaintiffs to convert their action into a representative action. The court stated that Montgomery Ward had had full knowledge of all of the plaintiffs' claims for several years, and that the mere readjustment of this lawsuit from a multiple plaintiff joint action to a representative action did not prejudice Montgomery Ward. *Id.*

## III

### Contentions of the Parties

#### A. *Necessity of a Timely Charge*

All of the parties to this appeal argue that the court erred in not adopting a more absolute position on whether every plaintiff must file a timely charge. Montgomery Ward submits that piggybacking should not be allowed under any circumstance. It contends that the plain language of the charge-filing requirement establishes that "the filing of a charge is a mandatory prerequisite for any individual who wishes to bring a civil action under the ADEA." Appellant's Br. at 7. Montgomery Ward claims that courts cannot overlook a statute's procedural requirements by focusing on the broad remedial goals of a statute. "Focusing on broad policies rather than specific statutory language frustrates congressional intent by ignoring the legislative compromises frequently embodied in procedural requirements." *Id.* at 8. Montgomery Ward also maintains that Title VII precepts are not controlling in ADEA cases. Rather, Montgomery Ward claims that Congress intended to incorporate into ADEA the remedies and procedures of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and not the procedural requirements of Title VII. Montgomery Ward points out that Title VII allows traditional class actions while ADEA, following the pattern of the FLSA, only allows representative actions in which plaintiffs must expressly consent to being represented.

As its fallback position, Montgomery Ward argues that piggybacking should be permissible only when an expressly representative charge has been filed. Montgomery Ward claims that every other circuit that has addressed this issue has at least required that the timely charges be expressly representative. According to Montgomery Ward, "[w]ithout such an expressly representative charge the conciliation purpose of the charge-filing requirement is severely undermined when piggybacking is permitted." Appellant's Br. at 14.

The appellees argue that the district court should have fully adopted the case law that has developed under Title VII. In their view, "so long as one plaintiff has filed a timely charge with the Equal Employment Opportunity Commission, similarly-aggrieved individuals can join the litigation as co-plaintiffs, intervenors, or members of the class." Appellees' Br. at 11. Thus, the appellees argue that there should be no requirement that piggybacking is allowed only into representative actions.

As a fallback position, the appellees argue that there should be no requirement of a representative charge, but that if this court should find such a requirement, it was satisfied here. The appellees submit that a "whole host" of charges "complained in the clearest possible way of a policy and pattern of age discrimination at Montgomery Ward." Appellees' Br. at 27. These claims satisfied the purpose of the charge-filing requirement that Montgomery Ward and the EEOC be placed on notice of an allegation of class-wide age discrimination. According to the appellees, requiring the charges to contain talismanic language of express representation would violate the Supreme Court's admonition against imposing strict technicalities on a charge process in which parties frequently are not represented by attorneys.

#### B. *Amendment of the Complaint*

Assuming that piggybacking is permissible, Montgomery Ward contends that the district court erred in allowing the plaintiffs to amend their complaint into a representative action. Montgomery Ward claims that the statute of limitations for an ADEA action is at most three years. Be-

cause more than three years had passed since any of the plaintiffs' cause of action accrued, the amendment should not have been allowed. Moreover, Montgomery Ward contends that the amendment would be inappropriate in this instance because ADEA requires that each plaintiff in a representative action file a written consent with the district court in order to opt-in to a representative action. *See* 29 U.S.C. § 216(b). According to Montgomery Ward, because none of the plaintiffs have filed a written consent opting-in to a representative action, amendment of the complaint was futile because it was too late for any claimant to file his written consent. *See* 29 U.S.C. § 256.

The appellees' first response is that this court need not address this issue. Should this court decide that piggybacking is permissible even when the lawsuit is not styled as "representative," then there was no need for the appellees to amend their complaint. However, should this court determine that amendment was required, the appellees argue that the district court properly permitted amendment because the date that the amended complaint was filed should relate back to the date that the original complaint was filed, as allowed by Rule 15(c) of the Federal Rules of Civil Procedure. Thus, the representative action was commenced well within the three-year statute of limitations. Further, the appellees argue that they have complied with ADEA's requirement that all opt-in plaintiffs file written consents with the court. By participating as individual plaintiffs in this suit for several years, the appellees maintain that they notified the court and Montgomery Ward of their willingness to participate in litigation against Montgomery Ward. Montgomery Ward has conducted discovery involving the appellees for several years, they claim, and therefore it would be fundamentally unfair to bar the appellees from proceeding based on an overly strict reading of the written consent requirement.

8. *See infra* note 10 and accompanying text.

9. ADEA's present litigation procedures are the same as at the time of *Lorillard,* except that the duties and responsibilities of the Secretary of

## IV

## Discussion

### A. *Necessity of a Timely Charge*

In enacting ADEA, Congress borrowed from two rather different pre-existing statutory schemes—the FLSA and Title VII. Here we must decide which of these schemes controls when a party who has not filed a charge with the EEOC later attempts to join an action with other plaintiffs who did file such a charge. Since ADEA's statutory language does not give us a clear-cut answer,[8] it is necessary to identify the intent of Congress from the text and structure of the statute as well as from its legislative history. Fortunately, several pronouncements from the Supreme Court guide our inquiry.

The basic model for ADEA is the FLSA. *See Lorillard v. Pons,* 434 U.S. 575, 578–82, 98 S.Ct. 866, 868–71, 55 L.Ed.2d 40 (1978). "[T]he rights created by the ADEA are to be 'enforced in accordance with the powers, remedies and procedures' of specified sections of the FLSA." *Id.* at 579, 98 S.Ct. at 869 (quoting 29 U.S.C. § 626(b)). The "selectivity that Congress exhibited in incorporating provisions and in modifying certain FLSA practices strongly suggests that but for those changes Congress expressly made, it intended to incorporate fully the remedies and procedures of the FLSA." *Id.* at 582, 98 S.Ct. at 871. Thus, ADEA's basic judicial remedies follow the structure of the FLSA. The Court in *Lorillard* noted, referring to ADEA's litigation procedures as they existed until January 1, 1979:[9]

Following the model of the FLSA, the ADEA establishes two primary enforcement mechanisms. Under the FLSA provisions incorporated in § 7(b) of the ADEA, 29 U.S.C. § 626(b), the Secretary of Labor may bring suit on behalf of an aggrieved individual for injunctive and

Labor were shifted to the EEOC effective January 1, 1979. Reorganization Plan No. 1 of 1978, § 2, 43 Fed.Reg. 19807, 92 Stat. 3781.

monetary relief. 29 U.S.C. §§ 216(c), 217 (1970 ed. and Supp. V). The incorporated FLSA provisions together with § 7(c) of the ADEA, 29 U.S.C. § 626(c), in addition, authorize private civil actions for "such legal equitable relief as will effectuate the purposes of" the ADEA.

*Id.* at 579, 98 S.Ct. at 869 (quoting 29 U.S.C. § 626(c)).

However, from the beginning, the prelitigation procedures under ADEA have not followed the FLSA. As the *Lorillard* Court noted:

> Although not required by the FLSA, prior to the initiation of any ADEA action, an individual must give notice to the Secretary of Labor of his intention to sue in order that the Secretary can attempt to eliminate the alleged unlawful practice through informal methods. § 7(d), 29 U.S.C. § 626(d). After allowing the Secretary 60 days to conciliate the alleged unlawful practice, the individual may file suit. The right of the individual to sue on his own terminates, however, if the Secretary commences an action on his behalf. § 7(c), 29 U.S.C. § 626(c).

*Id.* at 579–80, 98 S.Ct. at 869–70. The language of section 626(d), the charge-filing requirement, as it existed at the time of *Lorillard*, read as follows:

> No civil action may be commenced by an individual under this section until the individual has given the Secretary not less than sixty days' notice of an intent to file such action.

29 U.S.C. § 626(d) (1967). It is unclear whether this language was meant to require that *every* individual give notice to the Secretary prior to suit. In addressing another prelitigation device under ADEA— the requirement of notification of state agencies under 29 U.S.C. § 633(b)—the Supreme Court noted the obvious parallelism between the prelitigation stages of Title VII actions and those of ADEA actions and suggested that, while exhaustion would be required for "claims for individual relief," "[n]othing in our decision in anywise disturbs the rule of *Albemarle Paper Co. v.*

*Moody,* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 2370 n. 8, 45 L.Ed.2d 280 (1975), concerning the rights of unnamed parties in plaintiff class actions." *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 758 n. 6, 99 S.Ct. 2066, 2073 n. 6, 60 L.Ed.2d 609 (1979). In *Albemarle Paper Co.,* the Court had noted that Congress clearly intended that back pay could be awarded to unnamed parties in a Title VII plaintiff class who had not exhausted administrative remedies by filing charges with the Secretary of Labor. This *dictum* in *Oscar Mayer & Co.* may be read to mean that Congress did not intend to require that every litigant make a timely filing before commencing an ADEA action in district court.

In 1978, Congress amended the requirement that the Secretary of Labor be notified prior to the institution of an ADEA suit; the plaintiff would now file a "charge" rather than a notice of intent to sue. However, the basic purpose of this prelitigation device remained unchanged:

> This change in language is not intended to alter the basic purpose of the notice requirement, which is to provide the Department with sufficient information so that it may notify prospective defendants and to provide the Secretary with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation. Therefore, the conferees intend that the "charge" requirement will be satisfied by the filing of a written statement which identifies the potential defendant and generally describes the action believed to be discriminatory.

H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess., *reprinted in* 1978 *U.S. Code Cong. & Admin.News* 504, 528, 534. More important, the statutory language also was altered to eliminate the requirement that no suit be filed "*until the individual has given*" notice. The new statutory language simply requires that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed...." 29 U.S.C. § 626(d).[10]

---

**10.** As a result of this change in the statute, we

certainly must reject Montgomery Ward's sug-

**1016**

This language, while not identical to that employed in Title VII, is similar. *See* 42 U.S.C. § 2000e–5. Moreover, Congress made it clear that the filing requirement was not jurisdictional:

> The conferees agree that the "charge" requirement is not a jurisdictional prerequisite to maintaining an action under the ADEA and that therefore equitable modification for failing to file within the time period will be available to plaintiffs under this Act.

H.R.Conf.Rep. No. 950, *supra, reprinted in* 1978 *U.S.Code Cong. & Admin.News* 528, 534.

Although they did not deal with the precise question before us, three Supreme Court cases have noted the similarity between the filing requirements of ADEA and Title VII. *See EEOC v. Commercial Office Prods.,* — U.S. ——, 108 S.Ct. 1666, 1675, 100 L.Ed.2d 96 (1988); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 395 n. 11, 102 S.Ct. 1127, 1133 n. 11, 71 L.Ed.2d 234 (1982); *Oscar Mayer & Co.,* 441 U.S. at 755, 99 S.Ct. at 2071. Certainly, both the Title VII requirement and the ADEA charge requirement are intended to perform the same functions. In both statutory schemes, the charge is designed to afford the defendant notice of the allegations and to permit conciliation by the EEOC. *See* H.R.Conf.Rep. No. 950, *supra, reprinted in* 1978 *U.S.Code Cong. & Admin.News* 528, 534; *Babrocky v. Jewel Food Co.,* 773 F.2d 857, 863 (7th Cir.1985). Notably, neither of these purposes is at all relevant in FLSA actions. The FLSA has no prelitigation charge-filing requirement, and conciliation is not an objective of FLSA procedures. *EEOC v. Hernando Bank, Inc.,* 724 F.2d 1188, 1193–94 (5th Cir.1984); *EEOC v. Home of Economy, Inc.,* 712 F.2d 356, 357 (8th Cir.1983); *Ososky v. Wick,* 704 F.2d 1264, 1265–66 (D.C.Cir.1983); *DiMartino v. City of Hartford,* 636 F.Supp. 1241, 1246 (D.Conn.1986).

■ The question we must resolve, therefore, is whether the differences between the litigation schemes of Title VII and ADEA require that we impose different standards on the charge-filing requirements despite their similarities in purpose during the prelitigation stage. In our view, the strong parallelism between the charge-filing requirements of ADEA and Title VII cannot be ignored. *See Stearns v. Consolidated Management, Inc.,* 747 F.2d 1105, 1111 (7th Cir.1984). We conclude, therefore, that Congress did not intend to require that every individual who files a suit under ADEA also must have filed an individual charge. However, we also believe that the charge-filing requirements under ADEA cannot be interpreted without any reference to the FLSA-based litigation process that Congress has mandated. In opting for the FLSA scheme, Congress also chose the "opt-in" provision of the FLSA. Under this provision, 29 U.S.C. § 216(b), all plaintiffs in an ADEA representative action must affirmatively opt-in to the suit. Thus, there are no anonymous plaintiffs under ADEA. One of the chief purposes behind this particular provision was to prevent the filing of claims on behalf of a large group of unnamed and nonparticipating plaintiffs. *See Arrington v. National Broadcasting Co.,* 531 F.Supp. 498, 501 (D.D.C.1982). In light of this litigation procedure, we believe it is necessary that the defendant at least be apprised during the conciliation process of the possibility of a subsequent lawsuit with many plaintiffs. Therefore, in our view, the charge must, at the very least, contain an allegation of class-wide discrimination. This notification is necessary in order to satisfy Congress' express desire that the defendant understand, during the conciliation stage, the magnitude of his potential liability. We therefore approve of the basic position taken by the Eighth, Ninth and Tenth Circuits that only a charge that fulfills this notice criterion may serve as a basis for suit by others who are similarly situated. *See Kloos v. Carter–Day Co.,* 799 F.2d 397, 400–02 (8th Cir.1986) (timely charge must allege class-wide age discrimi-

---

gestion that the plain language of the statute definitively requires every plaintiff to have filed a timely charge. In our view, the language of the statute more closely supports the appellees' position. The statute's only requirement is that a charge must "have been filed." 29 U.S.C. § 626(d). Nothing in the statute elaborates on who must file that charge.

nation or purport to represent a class in order to allow piggybacking); *Naton v. Bank of California*, 649 F.2d 691, 697 (9th Cir.1981) (piggybacking not allowed when no charge had been timely filed and when charges did not put Secretary of Labor and defendants on notice "that the discrimination charges encompassed a pattern of unlawful conduct transcending an isolated individual claim and that they should act accordingly"); *Mistretta v. Sandia Corp.*, 639 F.2d 588, 593–95 (10th Cir.1980) (piggybacking permissible based on rationale of *Bean v. Crocker Nat'l Bank*, 600 F.2d 754 (9th Cir.1979)); *Bean v. Crocker Nat'l Bank*, 600 F.2d 754, 759–60 (9th Cir.1979) (relying on Title VII precedents, court concludes that piggybacking permissible because timely charge placed Secretary of Labor and defendant on notice of class-wide discrimination).[11]

We understand that each of these cases expresses the notification requirement somewhat differently and that some can be read as requiring that the charge expressly state that the complainant intends to represent himself and others similarly situated. However, we do not believe that such an explicit mention that a representative action is contemplated is necessary. Like the *Kloos* court, we believe that "[t]o be faithful to the purposes of the filing requirement, an administrative charge must allege class-wide age discrimination or claim to represent a class in order to serve as the basis for an ADEA class action under section 216(b)." 799 F.2d at 400. Such a representation will "inform and give notice to the employer that the consequences of an individual plaintiff's charge may ' "transcend[ ] an insolated [sic] individual claim." ' " *Id.* (quoting *Naton*, 649 F.2d at 697 (quoting *Bean*, 600 F.2d at 760)).

■ In this case at least 27 charges, 23 of which were timely, contained plain allegations of class-based discrimination.[12] The district court specifically found that

these charges notified the EEOC and Montgomery Ward that Montgomery Ward may have engaged in "systematic age discrimination." *Ward III*, 650 F.Supp. at 1478. We have examined the charges and there can be no doubt that many clearly alleged class-wide discrimination. Montgomery Ward certainly knew, and indeed it has admitted knowing,[13] that it faced a class-wide ADEA suit. Under these facts, we can only conclude that all the purposes for ADEA's charge-filing requirement have been satisfied. For that reason, the district court did not err when it denied Montgomery Ward's motion to dismiss the seven appellees who did not file timely EEOC charges.

### B. *Amendment of the Complaint*

#### 1.

■ In order to allow the seven appellees to rely on the timely charges of their co-plaintiffs, the district court required, and allowed, the plaintiffs to file a third amended complaint to convert their multiple plaintiff joint action into an ADEA representative action. Montgomery Ward submits that the district court erred when it allowed the plaintiffs to amend their complaint into a representative action because ADEA's three-year statute of limitations had expired. That is, notwithstanding the district court's decision that not all plaintiffs need to file a timely EEOC charge, Montgomery Ward submits that the appellees are still barred from maintaining this action because there was no representative action filed within three years of the alleged ADEA violations.

This contention is without merit for two reasons. First, we do not believe that it was necessary for the plaintiffs to amend their complaint to plead a representative action. Every court of appeals that has addressed the issue has held, under Title VII, that plaintiffs who have not timely filed a charge can rely on the timely charge

**11.** The Fifth Circuit in *McCorstin v. United States Steel Corp.*, 621 F.2d 749 (5th Cir.1980), while squarely holding that ADEA claims are governed by the opt-in provisions of section 16(b) of the FLSA, rather than the opt-out provisions of Rule 23(b) of the Federal Rules of Civil Procedure, did not reach the issue of whether a

notice could include other employees "if the notice embraces claims of similarly situated employees." *Id.* at 756.

**12.** *See supra* note 3.

**13.** *See supra* note 4.

of another plaintiff in a class action *or* in a multiple plaintiff joint action. *See, e.g., Snell v. Suffolk County,* 782 F.2d 1094, 1100–02 (2d Cir.1986); *Jackson v. Seaboard Coast Line R.R.,* 678 F.2d 992, 1011–12 (11th Cir.1982); *Allen v. United States Steel Corp.,* 665 F.2d 689, 695 (5th Cir. 1982); *Foster v. Gueory,* 655 F.2d 1319, 1322–23 (D.C.Cir.1981); *Allen v. Amalgamated Transit Union,* 554 F.2d 876, 879, 882–83 & n. 9 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). Although we earlier said that Title VII is not always the model for ADEA, particularly in matters of litigation procedure, we see no reason why a claimant should be able to rely on another claimant's charge in a representative action but not in a joint action. Under ADEA, there is no such thing as a class action. Rather, ADEA only allows representative actions, a procedure that more closely resembles a multiple plaintiff joint action than it resembles a class action. In a representative action, every plaintiff, named or unnamed, must notify the court of his willingness to participate in, and be bound by, the litigation. Thus, as in a joint action, a defendant in a representative action is on notice of every claimant against whom it must defend.

Because Title VII case law does not distinguish between multiple plaintiff joint actions and class actions, and since there is so little difference between an ADEA representative action and a multiple plaintiff joint action, we see no valid reason to distinguish between the two types of actions for purposes of the ADEA charge-filing requirement. In both types of actions plaintiffs who have not filed a timely charge must come before the court and express a willingness to have their claims determined conclusively. The defendant is aware of the breadth of the claims against it. For that reason, the district court did not need to require the plaintiffs to amend their complaint into a representative action.

■ Even if the plaintiffs did need to amend their complaint so that the seven appellees could remain in this litigation, the district court properly allowed the plaintiffs to amend their complaint even though the statute of limitations had expired.

Rule 15(c) of the Federal Rules of Civil Procedure allows the date of an amended pleading to relate back to the date of the original pleading if the claim asserted in the amended pleading arose out of the same "conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading...." Fed.R.Civ.P. 15(c). Montgomery Ward submits that this rule is not applicable here because the plaintiffs' amended complaint added new parties. We cannot agree. All of the appellees have been parties to this litigation for several years. The defendants have deposed many of the appellees; they have known about their claims; and they have actively defended against their allegations. We cannot say that the district court erred when it allowed the appellees to amend their complaint to plead a representative action. *See generally Paskuly v. Marshall Field & Co.,* 646 F.2d 1210, 1211 (7th Cir.), *cert. denied,* 454 U.S. 863, 102 S.Ct. 321, 70 L.Ed.2d 162 (1981) (class claims related back to time of original pleading); *Staren v. American Nat'l Bank,* 529 F.2d 1257, 1263 (7th Cir.1976) (substitution of parties not significant when change was purely formal).

2.

■ Montgomery Ward raises one final argument. It suggests that the statute of limitations has expired on the plaintiffs' claims in a representative action because the plaintiffs did not file written consents with the district court to participate in a representative action. As we have noted, however, the plaintiffs did not need to amend their complaint into a representative action; there was thus no need for the plaintiffs to file written consents with the district court to participate in a representative action. Moreover, based on *Allen v. Atlantic Richfield Co.,* 724 F.2d 1131, 1135 (5th Cir.1984), *Morelock v. NCR Corp.,* 586 F.2d 1096, 1103 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979), and *LaChapelle v. Owens–Illinois, Inc.,* 513 F.2d 286, 289 n. 10 (5th Cir.1975), the requirement that plaintiffs in a representative action file a written consent with the district court applies only to those parties who are not named as plaintiffs in the

complaint. As the court said in *Allen:* "We conclude that parties named in a suit, who have hired a lawyer to file a complaint on their behalf, have clearly indicated their consent to suit. The statute does not require additional time-and-resource-consuming filings." 724 F.2d at 1135. In the present case, all of the plaintiffs are named in the complaint; they have hired an attorney; and they have actively participated in the litigation. ADEA does not then require that these plaintiffs file a routine written consent whose only purpose is to notify the court and the defendants that the plaintiffs agree to participate in the lawsuit.

### Conclusion

We conclude that ADEA does not require that every plaintiff file a timely charge. So long as similarly situated plaintiffs have filed timely charges that allege class-wide discrimination, the purposes for ADEA's charge-filing requirement are satisfied. That result obtained here. The judgment of the district court is affirmed.

AFFIRMED.