**Linda BEVINS and Fern Stallard, Plaintiffs,**

v.

**DOLLAR GENERAL CORP., Defendant.**

Civil Action No. 95–220.

United States District Court, E.D. Kentucky.

Jan. 28, 1997.

John Thacker, Kelsey E. Friend Law Firm, Pikeville, KY, for Linda Bevins, Fern Stallard.

George J. Miller, Wyatt, Tarrant & Combs, Lexington, KY, for Dollar General Corporation.

## *MEMORANDUM OPINION & ORDER*

HOOD, District Judge.

This matter is before the Court on the motion of the defendant for summary judgment [Record No. 19]. The plaintiff has responded [Record No. 21]. This matter is now ripe for decision. Having reviewed the record and the memoranda submitted by the parties, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The defendant, Dollar General Corp. ("Dollar General"), employed the plaintiffs, Linda Bevins and Fern Stallard, at its Neon, Letcher County, Kentucky store. Dollar General fired the plaintiffs on January 12, 1995.

Linda Bevins started working for the defendant in June of 1989. She admits that upon being hired she received a copy of the employee handbook which explained the company's policies. Originally, she was hired as a part-time clerk, but eventually she moved up to full-time clerk in 1990. During her employment with Dollar General, she was an at-will employee.

Fern Stallard started working for the defendant in September of 1990. She too received a copy of the employee handbook when she was first hired. Ms. Stallard was hired as and remained a part-time clerk throughout her employment with Dollar General. She likewise was an at-will employee.

Both Ms. Bevins and Ms. Stallard claim that during their employment with Dollar General, their supervisor, Yvonne Mullins, forced them to work overtime without pay, ie. work "off the clock". They state that Ms. Mullins told them that she could not and did not want to deal with adding up extra minutes. So, they were told to write down that they worked eight hours a day, regardless of the fact that they often worked fifteen to twenty minutes over their eight hour shift. If they recorded more than eight hours, Ms. Bevins and Ms. Stallard submit that Ms. Mullins impliedly and explicitly stated they would no longer be employed at Dollar General.

They state that they knew it was against company policy to work "off the clock", but that they felt they had no other choice. They believed they were suppose to follow their supervisor's directions regardless, and thus they continued to work the overtime hours without pay.

Ms. Stallard admits that she did not complain to anybody about having to work "off

the clock" other than Ms. Mullins, the person forcing her to work "off the clock". She states, "No, I didn't. I didn't complain about doing any of the stuff that we wasn't suppose to do, you know. I just went ahead and did it as part of my job." Stallard depo. at pp. 67–68.

Ms. Bevins similarly states that she did not complain to anyone other than Ms. Mullins until January 3, 1995; then, she, unlike Ms. Stallard, states she complained to the district manager, Glenn Bunch, about working overtime and not getting paid. She admits, however, that Mr. Bunch initiated the conversation, asking her if she had worked "off the clock". She told him "yes", but said nothing further about the situation. Bevins depo. at pp. 59–60.

Ms. Stallard and Ms. Bevins also allege that they were objects of discrimination due to their sex and age. They submit that a "young male employee receiv[ed] better hours, benefits and promises of promotions." Plaintiffs' Response at pp. 1–2. They complain that the young man, Mr. Brandon Fleming, was paid for his lunch hours, but that they were not. They also complain that Mr. Fleming did not have to work Christmas Eve, but that they both did.

Ms. Bevins further argues that Mr. Fleming was offered a promotion to first clerk position over her, when she was more qualified than he. Ms. Stallard argues that she was scheduled less hours because Mr. Fleming was given more hours and that she should have been promoted to full-time clerk.

Ms. Bevins and Ms. Stallard also allege that they were discharged in retaliation for complaining about the discriminatory treatment and the working "off the clock." Despite the fact that they were told when fired that they were being terminated for working "off the clock" against company policy, they maintain that the real reason was because they complained.

Lastly, Ms. Bevins and Ms. Stallard state that Dollar General's acts of making them "work off the clock, under threat of discharge, and then discharging them for working off the clock" constitute outrageous conduct. Plaintiff's Response at p. 3. As a

result of that conduct, they allegedly suffered emotional distress.

After they were terminated, Ms. Bevins and Ms. Stallard went to the Kentucky Labor Cabinet ("KLC") and the Kentucky Commission on Human Rights ("KCHR"). They both filled out Charge Questionnaires for the KCHR and Employment Complaint Forms for the KLC. Neither Ms. Stallard nor Ms. Bevins, however, filed a complaint with the Equal Employment Opportunity Commission ("EEOC").

The KLC investigated their complaint about the hours they allegedly worked overtime and for which they were not paid. The plaintiffs eventually were paid for the hours they worked "off the clock" due to that investigation. The plaintiffs, however, were advised by the KCHR that it did not have jurisdiction over this matter and therefore would not pursue their claims any further. The plaintiffs, then, filed this lawsuit in the Letcher Circuit Court.

Upon receiving the complaint, Dollar General filed a notice of removal to this Court, noting that the plaintiffs' claims arose under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., Title VII, 42 U.S.C. §§ 2000e, et seq., the Equal Pay Act, 29 U.S.C. § 206(d), and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. The defendant sought removal on the basis that this court had original jurisdiction since these claims were federal questions. The defendant noted that the plaintiffs had made a state law, tort of outrage claim, otherwise known as an intentional infliction of emotional distress. Since this claim was related to the plaintiffs' allegations of being made to work "off the clock" and being fired for doing so, this Court has supplemental jurisdiction over such pendant claim.

The plaintiffs never objected nor responded in any way to Dollar General's notice of removal. The case, thus, proceeded forward. The Court subsequently dismissed the plaintiffs' claims under the Fair Labor Standards Act for wages owed for hours worked "off the clock" since Dollar General eventually paid the plaintiffs for those hours; the claim of retaliatory discharge under the Fair Labor Standards Act, however, was not dismissed.

Dollar General has now moved this Court for summary judgment as to all pending claims.

## CONCLUSIONS OF LAW

In deciding whether to grant summary judgment, the Court must view the facts presented in a light most favorable to the nonmoving party. *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876, 882 (6th Cir.1996). If the Court finds that there is no genuine issue of material fact for the jury to consider, summary judgment may be granted. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989).

### I. *Sex and Age Discrimination Claims*

■ Ms. Bevins and Ms. Stallard have alleged sex and age discrimination and retaliatory discharge under Title VII,[1] the Age Discrimination in Employment Act ("ADEA"), and the Equal Pay Act. Under both Title VII and the ADEA,[2] the plaintiffs must exhaust their administrative remedies before filing suit in federal court. *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir.1992) (citing *Brown v. General Servs. Admin.*, 425 U.S. 820, 832, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976)). The plaintiffs must file a complaint with the EEOC and receive a "right to sue" letter.

> Timely filing of an EEOC complaint is a prerequisite to a Title VII suit. The purpose of the Title VII filing requirement is to give notice of potential Title VII liability to an alleged wrongdoer and to allow the EEOC to attempt to conciliate with the wrongdoer rather than go to court.

*EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 839 (6th Cir.1994) (citations omitted).

Since neither Ms. Bevins nor Ms. Stallard filed a complaint with the EEOC as required, the plaintiffs have failed to exhaust their administrative remedies. Thus, these claims must be dismissed without prejudice.

The plaintiffs, however, argue that they have exhausted their administrative remedies. Both Ms. Bevins and Ms. Stallard filed "charges" with the KCHR. Although filing a "charge" with a state agency can sometimes satisfy the requirement that a complaint be filed with the EEOC when the plaintiffs can show that the state agency and the EEOC had an agreement that complaints filed with one agency would be deemed filed with the other agency, the plaintiffs have failed to show such interconnection. *See Brown v. Crowe*, 963 F.2d 895, 898 (6th Cir.1992) ("By filing his charge with the THRC—which, under the worksharing agreement, acted as agent for the EEOC, and *vice versa*—Brown simultaneously filed his charge with the EEOC."); *see also EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 112, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988); *Ford v. Bernard Fineson Dev. Center*, 81 F.3d 304, 308 & 311 (2d Cir.1996). In fact, in response to Dollar General's Freedom of Information Act inquiry, the regional EEOC noted that it had never received any inquiry or complaint by the plaintiffs.

■ Moreover, even if the "charge" to the KCHR could be construed as a complaint to the EEOC, the plaintiffs failed to request "right to sue" letters, a further precondition to filing a lawsuit in federal court. *See Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir.1989). Although the "right to

---

**1.** The plaintiffs never actually stated in their complaint what statutes their claims fell under. Since the plaintiffs' have not objected to the defendant's characterization of their claims arising under federal law rather than state law, the Court declines to look at their claims under Kentucky's discrimination statute, KRS Chapter 344, the Kentucky Civil Rights Act.

Even if this Court did decide that the plaintiffs' had set forth claims under Kentucky's discrimination statute, the analysis under the federal statute and the Kentucky statute remains the same. "Kentucky Revised Statutes Annotated § 344.040 is virtually identical to the corresponding provision of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e–17, and Kentucky courts have followed federal law in interpreting the Kentucky statute." *Gafford v. General Elec. Co.*, 997 F.2d 150, 166 (6th Cir.1993) (citing *Kentucky Comm'n on Human Rights v. Kentucky*, 586 S.W.2d 270, 271 (Ky.Ct.App.1979)).

**2.** Title VII and the ADEA are almost identical in purpose and structure. "Both Title VII and the ADEA share a common purpose, i.e., elimination of discrimination in employment, both statutory schemes are similar and both statutes have almost identical filing requirements and statutes of limitation." *Jones v. AIRCO Carbide Chemical Co.*, 691 F.2d 1200, 1202 n. 2 (6th Cir.1982).

sue" letter prerequisite can be waived, equitably tolled, or estopped, "[e]quitable tolling or waiver ... is available only in compelling circumstances which justify a departure from established procedures." *Id.* As in *Puckett,* the plaintiffs in this case never attempted to obtain a "right to sue" letter. Since "[s]uch a decision flouts the statutory requirement ..., and amounts to a position of arrogance regarding the statutory requirement as mere surplusage[,] ... we conclude that a right-to-sue letter was a necessary prerequisite to filing suit...." *Id.*

Having failed to meet the preconditions set forth above, Ms. Bevins' and Ms. Stallard's age and sex discrimination claims under Title VII and the ADEA, and their connected claims for retaliatory discharge, must be dismissed without prejudice so that their administrative remedies may be exhausted. Such exhaustion is necessary so as to allow a resolution of the dispute without having to proceed to court.

> [T]he purpose of requiring the filing [of] EEOC charges "is to provide the [EEOC] with sufficient information so that it may notify prospective defendants and to provide the [EEOC] with an opportunity to eliminate the alleged unlawful practices through informal methods of conciliation."

*Howlett v. Holiday Inns, Inc.,* 49 F.3d 189, 196 (6th Cir.) (quoting *Anderson v. Montgomery Ward & Co., Inc.,* 852 F.2d 1008, 1015 (7th Cir.1988), *cert. denied,* —— U.S. ——, 116 S.Ct. 379, 133 L.Ed.2d 302 (1995); *see also Vinson v. Ford Motor Co.,* 806 F.2d 686 (6th Cir.1986) ("Conciliation is an important purpose of the requirement that a claimant first file with an administrative agency.")), *cert. denied,* 482 U.S. 906, 107 S.Ct. 2482, 96 L.Ed.2d 375 (1987).

■ Under the Equal Pay Act,[3] however, the plaintiffs need not exhaust their adminis-

trative remedies by filing a complaint with the EEOC. "[T]he Equal Pay Act, unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts." *County of Washington v. Gunther,* 452 U.S. 161, 175 n. 14, 101 S.Ct. 2242, 2250 n. 14, 68 L.Ed.2d 751 (1981); *see also Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1527 (11th Cir.1992); *Willis v. Morris,* 70 F.3d 116 (6th Cir.1995) (unpublished disposition), *cert. denied,* —— U.S. ——, 116 S.Ct. 1319, 134 L.Ed.2d 471 (1996). Thus, the plaintiffs' claims under the Equal Pay Act remain intact. The Court, however, declines to rule on such claims, since neither the defendant nor the plaintiffs addressed such claims in their memoranda addressing the motion for summary judgment.

## II. Retaliation Claim Under the Fair Labor Standards Act

■ "Section 15(a)(3) of the Fair Labor Standards Act of 1938 [ ("FLSA") ] was enacted by Congress to remove the risk of employer retaliation against efforts by employees to secure their 'just wage deserts under the Act'." *Dunlop v. Carriage Carpet Co.,* 548 F.2d 139, 145 (6th Cir.1977) (quoting *Mitchell v. DeMario Jewelry,* 361 U.S. 288, 292, 80 S.Ct. 332, 335–36, 4 L.Ed.2d 323 (1960)). In this matter, Ms. Bevins and Ms. Stallard claim that they were discharged from Dollar General in retaliation for reporting that they had worked "off the clock" and were not paid for those hours.

To support a claim of retaliation under the FLSA, the plaintiffs' must show that they were discharged because they "filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Taking the

---

**3.** It is unclear whether the plaintiffs have put forth a claim for discrimination under the Equal Pay Act.

> Gender-based discrimination in rates of pay to employees, whether male or female, is prohibited by the Equal Pay Act of 1963, which is a portion of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 206(d) (1976), as well as by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The Equal

> Pay Act was directed *only* at wage discrimination between the sexes and forbids the specific practice of paying unequal wages for equal work to employees of the opposite sex.

*Miranda v. B & B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1526 (11th Cir.1992) (emphasis added) (footnote in original omitted). However, because the defendant stated in its notice of removal that the plaintiffs' discrimination claims fall under the Equal Pay Act, as well as Title VII and the ADEA, the Court must address this issue.

plaintiff's factual allegations as true, as the Court must do in a motion for summary judgment by the defendants, Ms. Bevins and Ms. Stallard have not shown that they were discharged because they complained about working "off the clock" [4].

According to both Ms. Bevins and Ms. Stallard, they reported and complained about working "off the clock" to their immediate supervisor, Ms. Yvonne Mullins. Ms. Mullins, however, was the supervisor who allegedly made them work "off the clock". Thus, in order to have complained about being forced to work "off the clock" in violation of the FLSA, the plaintiffs would have had to have complained to management over Ms. Mullins.

Ms. Stallard, however, admits that she never complained to anybody else about the "off the clock" problem. She admits that she thought it was just part of her job.

■ Ms. Bevins likewise thought it was just part of her job; but, she states that she did complain to Mr. Bunch, the district manager, about the over hours problem, when he asked her whether she had worked "off the clock" in a January 3, 1995 meeting. She admits, however, that *all* she stated was that she had worked "off the clock". Such answer, that she worked "off the clock", does not constitute a complaint.

Thus, no one in upper management, the management who ultimately terminated Ms. Bevins and Ms. Stallard without the advice of their supervisor Ms. Mullins, knew that the plaintiffs were being required to work "off the clock" until Mr. Bunch inquired about such conduct at the Neon store. Once informed of the fact that Ms. Bevins and Ms. Stallard were working "off the clock"; management determined that they should be fired for violating company policy, as stated in the employee handbook.

The firing, then, was not a result of any complaint by the plaintiffs, since they had not actually complained to anyone except Ms. Mullins. *See EEOC v. White & Son Enters.,* 881 F.2d 1006, 1011 (11th Cir.1989) (noting

that the plaintiffs need not have filed formal charges with the EEOC and that their informal complaints were enough, where they complained to their foreman about unequal pay and then went to their boss, who ultimately fired them for such complaints). In fact, a week later Ms. Mullins herself was ultimately fired from Dollar General for violating company policy.

■ Moreover, even if the plaintiffs could be said to have complained about working "off the clock"; the plaintiffs have not shown that they were discharged *because of* their complaints. *See Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 181 (8th Cir. 1975) (stating that the plaintiff's complaint must be the "immediate cause or motivating factor" for a discharge to be discriminatory under § 215(a)(3)). When a plaintiff sets forth a discriminatory reason, the burden is then shifted to the defendant to show a legitimate reason for the release. *See Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 876–878 (2d Cir.1988) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). In this case, Dollar General has done so.

■ Dollar General submits that the plaintiffs were discharged because they violated company policy, as put forth in the employee handbook. The defendants clearly stated and wrote on Ms. Bevins' and Ms. Stallard's discharge forms that they were being terminated for violating company policy, working "off the clock." The plaintiffs have not shown that this reason is mere pretext; they have not shown "by a preponderance of the evidence that the improper reason was the true reason." *Id.* at 876. Hence, Ms. Bevins and Ms. Stallard have not satisfactorily rebutted Dollar General's legitimate reason. Consequently, the plaintiffs have failed to meet their burden and summary judgment for Dollar General is warranted as to this claim.

### III. *Intentional Infliction of Emotional Distress Claim*

Ms. Stallard claims that the defendant's acts of making her work "off the clock" and

---

**4.** Under *EEOC v. Romeo Community Schools,* 976 F.2d 985, 989–90 (6th Cir.1992), an informal complaint to one's employer constitutes filing a

"complaint" within the meaning of the FLSA's retaliatory discharge provision.

making her have to go to the district manager to get any of the problems at work resolved constitute outrageous conduct. When asked whether she considered any other actions by the defendant outrageous, "apart from having to go to the manager, or rather, the district manager", Ms. Stallard responded,

Well, no, it was just a lot of times the things maybe that she [Ms. Mullins] would say, you know, that we should take the money to the bank on our own time and stuff like that. I mean there was just too many people handled that money, you know, taking it to the bank, too many people that had the keys, and I didn't want to be in on it.

Stallard depo. at pp. 88–89. Ms. Stallard does not complain that the alleged acts of sex and age discrimination, i.e. not being promoted to first clerk, not getting paid for lunch, or having to work on Christmas Eve, were outrageous.

Ms. Bevins likewise only complains that the defendant's acts were outrageous in regards to being made to work "off the clock". She claims that Mr. Bunch told her to continue to work as she had and that she understood that to mean that she should continue to work "off the clock", and then she was fired for working "off the clock". She submits that Mr. Bunch's conduct was outrageous.

Like Ms. Stallard, Ms. Bevins also states that she thought Ms. Mullins' actions were outrageous. When asked if her outrageous conduct claim was based on Mr. Bunch's actions alone, she states, "Well, and the fact that Yvonne being my direct supervisor, that she knew I was going to the bank, she knew I was working off the clock, but then I'm the one that ends up getting fired for it." Bevins depo. at p. 109.

In recognizing a claim for intentional infliction of emotional distress, Kentucky has adopted the Restatement (Second) of Torts § 46. Comment d states, "Generally the case is one in which the recitation of facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, 'Outrageous!' The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppression, or other trivialities...." Restatement (Second) of Torts § 46.

In *Humana v. Seitz*, 796 S.W.2d 1, 4 (Ky. 1990), the Kentucky Supreme Court held that the plaintiff must present affirmative evidence to state a claim for the tort of outrage; belief is not enough. The plaintiff must show that the defendant's conduct "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* at 3 (quoting Restatement (Second) of Torts § 46, comment d); *see also Pierce v. Commonwealth Life Ins. Co.*, 825 F.Supp. 783 (E.D.Ky.1993), *aff'd*, 40 F.3d 796 (6th Cir.1994).

Since the seminal case of *Craft v. Rice*, 671 S.W.2d 247 (Ky.1984), which recognized the tort, Kentucky courts have taken a restrictive view towards this tort, granting summary judgments for defendants in many cases. In these cases the courts have found that the defendants' acts did not rise to the level of outrageous conduct needed to sustain a claim for this tort. The courts, instead, have found the defendants' conduct to fall into the "insulting, undignified ..." category. *See, e.g., Pierce*, 825 F.Supp. at 789 (defendants called the plaintiff a murderer, rapist, and made other insulting, derogatory remarks); *Humana*, 796 S.W.2d at 3 (plaintiff delivered a stillborn baby, and the nurses told her to "shut-up" and that they would dispose of the baby right there at the hospital).

This trend has continued. In 1994 the Sixth Circuit upheld the district court's decision in *Pierce*. In *Pierce* the defendant's employee, while demoting the plaintiff, commented to the plaintiff that he "might as well have been a murderer, rapist, or child molester" among other crude, sexually implicit remarks. Construing Kentucky law, the Sixth Circuit found that the defendant's employee's conduct was not outrageous enough to sustain a cause of action against the defendant. The Court held, "[U]nder Kentucky's stringent standards, no reasonable juror could conclude that the company's actions

were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Pierce,* 40 F.3d 796, 806 (6th Cir.1994).

Moreover, recently revisiting this tort in the case, *Kroger Co. v. Willgruber,* 920 S.W.2d 61 (Ky.1996), the Kentucky Supreme Court reinforced the Sixth Circuit's finding in *Pierce* by emphasizing that Kentucky still takes a restrictive/limited approach to this tort. The supreme court stressed that "only *outrageous* and *intolerable* conduct" is covered by this tort. *Id.* at 65. In so noting, the court made clear that the actions by the defendant must be clearly offensive and of a harassing nature. The court stated, "Citizens in our society are expected to withstand petty insults, unkind words and minor indignities. Such irritations are a part of normal, every day life and constitute no legal cause of action." *Id.*

Similarly, the Kentucky Court of Appeals likewise recently revisited this topic in *Allen v. Clemons,* 920 S.W.2d 884 (Ky.Ct.App. 1996), and found that under Kentucky's restrictive view the defendant's conduct in the case did not rise to the required level. The court held that the defendant's act of putting a sign in his yard, reading "Danger—Child Molester in the Community", was not sufficient conduct to sustain a claim for intentional infliction of emotional distress. The court noted that "not every bad act gives rise to a cause of action for the intentional infliction of severe emotional distress." *Id.* at 887 (citing *First & Farmers Bank v. Henderson,* 763 S.W.2d 137, 143 (Ky.Ct.App.1988)).

 In the case at hand, taking the nonmovant's factual allegations as true, the defendant's alleged acts of making the plaintiff's work "off the clock" and discharging them for then working "off the clock" do not rise to the level of outrageousness needed to sustain a claim for intentional infliction of emotional distress. Although it appears that the defendant could have been more lenient to the plaintiffs, disciplining them rather than discharging them for working "off the clock", the defendant's conduct does not make one exclaim "Outrageous!". *See* Restatement (Second) of Torts § 46, cmt d. At the most such conduct is merely bad conduct, not outrageous and intolerable conduct. In fact, most businesses would consider the firing of an at-will employee for violating company policy reasonable and a good business decision.

Comment h of the Restatement holds,

It is for the court to determine, on the first instance, whether the Defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability.

Following the precedent set forth above, this court does not find that the nature of the conduct is such that the case should be submitted to the jury. Consequently, the defendant's motion for summary judgment as to the intentional infliction of emotional distress claim will be granted.

Accordingly, **IT IS ORDERED** that the defendant's motion for summary judgment [Record No. 19], be and the same hereby is, **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Dollar General's motion for summary judgment as to the plaintiffs' claims for sex and age discrimination under Title VII and the ADEA, and the related claims of retaliatory discharge, be, and the same hereby is, **DENIED. IT IS FURTHER ORDERED** that these claims be, and the same hereby are, **DISMISSED WITHOUT PREJUDICE,** so that the plaintiffs may exhaust their administrative remedies. As noted in the opinion, the plaintiffs' discrimination claims under the Equal Pay Act, however, are not dismissed and remain intact.

(2) Dollar General's motion for summary judgment as to the retaliatory discharge for reporting the working "off the clock" in violation of the Fair Labor Standards Act be, and the same hereby is, **GRANTED;**

(3) Dollar General's motion for summary judgment as to the intentional infliction of

emotional distress claim, be, and the same hereby is, **GRANTED.**

(4) The pretrial conference set for Monday, February 3, 1997 at 11:00 a.m. in Pikeville, Kentucky shall proceed as scheduled.