**William HEAGNEY, et al., Plaintiffs,**

v.

**EUROPEAN AMERICAN BANK, Defendant.**

**No. CV 86–0843 (RJD).**

United States District Court, E.D. New York.

Oct. 17, 1988.

126

Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, Pa., and Alan H. Levine, Steel Bellman & Levine, P.C., New York City, for plaintiffs.

Allen I. Fagin, Aaron J. Schindel, Steven P. Seltzer, Proskauer Rose Goetz & Mendelsohn, New York City, for defendant.

## MEMORANDUM AND ORDER

DEARIE, District Judge.

In this action, plaintiffs allege that defendant discriminated against them on the basis of age in contravention of the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.* The matter is before the Court on plaintiffs' motion for authorization to proceed with the case as an "opt-in" class suit pursuant to 29 U.S.C. § 216(b) and for authorization of notice to potential opt-in plaintiffs. The Court concludes that the case may proceed as an opt-in class suit, with the class at least preliminarily defined as proposed by plaintiffs. The Court also concludes that counsel for plaintiffs may provide written notice to other potential class members without formal authorization by the Court. Thus, the Court neither orders nor prohibits such notice.

## BACKGROUND

The Fair Labor Standards Act, 29 U.S.C. § 216(b), creates a "statutory class action right," for any employee similarly situated to plaintiff, to join a lawsuit by filing appropriate notice with the court.[1] *Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23, 24 (M.D.N.C.1977); *McGinley v. Burroughs Corp.*, 407 F.Supp. 903 (E.D.Pa.1975). Accordingly, under section 216(b), a member of a class of plaintiffs who is not named in the complaint is not a party unless he or she affirmatively notifies the Court of a desire to "opt in". In this case, some 130 individuals have already joined as plaintiffs. Nearly all of these individuals have in common the fact that they left the defendant's employ by accepting defendant's Early Retirement Incentive Program (ERIP). Plaintiffs now allege that their decisions to retire were coerced, as part of a concerted effort by European American Bank to rid itself of older employees. Plaintiffs seek an order from this Court authorizing any Bank employee who was in the age group protected by ADEA between June 1, 1984 and December 31, 1985, and who, between those dates, accepted early retirement, resigned under pressure, or was fired or laid off, to opt in to this suit. Plaintiffs also seek an order authorizing them or their counsel to serve notice of this opt-in right to all potential plaintiffs who have not yet joined the suit.

## DISCUSSION

### A. Class Definition

Defendant argues that members of the purported class should not be permitted to opt in for two reasons. First, the Bank claims that employees who did not accept early retirement, but left the Bank for other reasons, should not be joined with the ERIP plaintiffs. Second, defendant asserts that even the ERIP plaintiffs (including present as well as potential plaintiffs)

present such disparate factual and legal issues that their cases should be tried individually.

█ The question facing the Court is whether members of the proposed class are "similarly situated." *Behr v. Drake Hotel*, 586 F.Supp. 427, 430 (N.D.Ill.1984). The plaintiffs "need not be identically situated to potential class members. Nevertheless, there must be a demonstrated *similarity* among the individual situations ... some identifiable factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged discrimination." *Palmer v. Readers Digest Ass'n*, 42 Fair Empl.Prac. (BNA) 212, 213 (S.D.N.Y.1986) [1986 WL 1458].

Class treatment under the ADEA is not defeated simply because, as here, the plaintiffs performed a variety of jobs in a number of departments at different locations. *Frank v. Capital Cities Communications, Inc.*, 33 Empl.Prac.Dec. (CCH) 34,285 (S.D.N.Y.1983) [1983 WL 643]. Although each retiree may have faced a unique package of incentives, as well as a unique set of alleged coercions, the fundamental allegation—that the supposedly voluntary ERIP was in reality a smokescreen for a deliberate campaign of discrimination—is common to all the ERIP plaintiffs and dominates each of their claims.[2] The ERIP retirees are thus "similarly situated" as required by the Fair Labor Standards Act.

█ Furthermore, those members of the potential class who were fired, laid off, or allegedly forced to resign during the relevant time period may also opt in to this suit. A careful reading of the complaint reveals that, while focusing on the ERIP, it alleges a pattern of discrimination that goes far beyond the ERIP:

---

**1.** The procedures of the Fair Labor Standards Act, including section 216(b), are incorporated by reference in the ADEA. Section 216(b) displaces the class action devices of Fed.R.Civ.P. 23, which are accordingly unavailable in an ADEA case. *E.g. Wagner v. Loew's Theatres, Inc.*, 76 F.R.D. 23 (M.D.N.C.1977).

**2.** Of course, the "similarly situated" requirement of 29 U.S.C. § 216(b) is considerably less stringent than the requirement of Fed.R.Civ.P. 23(b)(3) that common questions "predominate."

[Defendant decided to] terminate a large number of older workers and replace them with, or retain, younger workers, by firing or laying off older workers or by forcing them into accepting an early retirement program.

As part of this plan, management decided to force many older workers out by pressuring them into accepting an early retirement program.

. . . .

During the same time period, defendant permanently laid off and/or fired other workers in the protected class despite their satisfactory qualifications and performance. During that period defendant either retained or hired younger persons to perform duties which the older workers had performed or were qualified to perform. These younger persons were no more qualified, had not performed better and had no greater experience than did plaintiffs.

Complaint 144–47. These allegations suffice to satisfy the "similarly situated" standard. The workers may have left their jobs at different times via different procedural mechanisms, but the alleged unity of the discriminatory scheme they faced overwhelms those differences. *See Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D.Ill.1982) (class treatment permitted where allegation of orchestrated discrimination campaign would be focus of trial). The Court agrees with Judge Haight that:

> To deny class treatment would be tantamount to declaring that any employer can escape ADEA class liability so long as it discriminates against a diverse group of people over a wide geographic range in a number of ways, such as termination, salary, promotions, and working conditions.

*Frank*, 33 Empl.Prac.Dec. (CCH) at 33,084.

■ Defendant urges that if the Court finds class treatment appropriate, the right to opt in should be restricted to those potential class members who have timely filed, with the Equal Employment Opportunity Commission (EEOC), an individual age discrimination charge against defendant.[3] In making this argument, defendant relies on the statutory provision that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the Equal Employment Opportunity Commission." 29 U.S.C. § 626(d).

As indicated by Section 626(d) itself, the primary purpose for the administrative filing requirement is to allow accused employers the opportunity to resolve age discrimination charges without litigation, by conciliation or voluntary correction of unlawful practices. *Anderson v. Montgomery Ward & Co.*, 852 F.2d 1008, 1015 (7th Cir.1988). This purpose is met, in the context of alleged classwide discrimination, as long as at least one of the named plaintiffs files a timely charge with the EEOC that fairly puts the employer on notice of the classwide nature of the allegations. *Id.; Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988); *Kloos v. Carter–Day Co.*, 799 F.2d 397 (8th Cir.1986); *Naton v. Bank of California*, 649 F.2d 691 (9th Cir.1981); *Mistretta v. Sandia Corp.*, 639 F.2d 588 (10th Cir.1980); *Bean v. Crocker Nat'l Bank*, 600 F.2d 754 (9th Cir.1979).

As the Seventh Circuit noted, "each of these cases expresses the notification requirement somewhat differently," and "some can be read as requiring that the charge expressly state that the complainant intends to represent himself and others similarly situated." *Anderson*, 852 F.2d at 1017. Here, even that exacting standard was met by the concluding paragraph of the charge filed by the overwhelming majority of named plaintiffs: "I intend to file suit on behalf of myself and a class of all others similarly situated against EAB for age discrimination in connection with the termination of my employment and those

---

**3.** As discussed *infra,* defendant makes this argument with particular reference to those class members whose employment was terminated by discharge or resignation rather than by early retirement.

of other older workers."[4] The Bank takes the position that because those administrative charges referred to allegedly coerced participation in the ERIP, they did not put the Bank on notice of potential claims by older workers whose employment was terminated in ways other than early retirement.

In rejecting this contention, the Court bears in mind that ADEA is a remedial statute and must be liberally construed in favor of its intended beneficiaries, i.e., victims of age discrimination. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 761, 99 S.Ct. 2066, 2074, 60 L.Ed.2d 609 (1979); *Hyland v. New Haven Radiology Assocs., P.C.*, 794 F.2d 793, 796 (2d Cir.1986). It is therefore inappropriate to require a charge filed with the EEOC to include explicit notice of an intended class suit, or a technically precise definition of the proposed class, in order to permit non-charging parties to opt in to a subsequently-filed ADEA class suit. *Accord Anderson*, 852 F.2d at 1017; *Kloos*, 799 F.2d at 400 ("administrative charge must allege class-wide age discrimination *or* claim to represent a class in order to serve as the basis for an ADEA class action" (emphasis added)). What is required is "a representation [that] will 'inform and give notice to the employer that the consequences of an individual plaintiff's charge may "'transcend[ ] an insolated [sic] individual claim.'"'" *Anderson*, 852 F.2d at 1017 (quoting *Kloos*, 799 F.2d at 400 (quoting *Naton*, 649 F.2d at 697 (quoting *Bean*, 600 F.2d at 760))).

Plaintiffs' form charge in this action was sufficient to put the Bank on notice that plaintiffs were alleging a class-wide pattern of discrimination that went beyond the early retirement program. It is true that paragraphs five through seven of the charge referred explicitly to ERIP, and to alleged pressure to accept the ERIP. However, paragraph four alleged that "[i]n the Fall of 1984, EAB engaged in a program to get rid of older workers," and paragraph five alleged that ERIP was introduced "[a]s *part* of [that] program." And, significantly, paragraph nine—which gave explicit notice of intent to sue on behalf of a class—made no reference to ERIP, but complained of "the *termination* of my employment and those of other older workers" (emphasis added). Only an exceedingly crabbed reading of these allegations would limit their import to workers who had accepted early retirement.

The Court thus finds that the ADEA's administrative filing requirement has been satisfied for each member of the plaintiff class, regardless of the mechanism through which his or her employment was terminated, even if the class member did not file a timely individual charge with the EEOC. This conclusion is consistent with the remedial purposes of the Act as well as the conciliatory purposes of the filing requirement. The Bank can demonstrate no prejudice—other than greater potential liability—resulting from the Court's reading of plaintiffs' administrative charges. The Bank knew (1) that four fired employees had filed individual age discrimination charges (see footnote 4, *supra*), and (2) that many ERIP retirees had filed charges that alleged a classwide plan to terminate older workers' employment. There is no suggestion that more precisely crafted notice of discrimination against non-participants in the ERIP would have resulted in "eliminat[ion of] any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d).

Plaintiffs' application that they be allowed to maintain this action as an opt-in class suit is granted. Any person who was employed by defendant, was a member of the class protected by ADEA, and whose employment was terminated by any mechanism, between June 1, 1984 and December

---

**4.** A form charge filed by almost all named plaintiffs is appended to defendant's papers. Fagin Aff. Exh. H. According to defendant, one person who filed this charge was fired; all the rest took early retirement. Three other named plaintiffs, who did not accept early retirement but alleged that they were fired for criticizing the ERIP, filed charges in a different form; their charges make no reference whatever to allegations beyond their own individual cases. Fagin Aff. Exhs. J, K, L.

31, 1985, may join this suit as a plaintiff by filing appropriate notice with the Court.

B. Class Notice

■ Plaintiffs wish to send a notice to all potential class members, explaining the pendency of this action and their right to opt in. Defendant argues that the notice would be duplicative of earlier letters sent to the ERIP plaintiffs, and would amount to prohibited solicitation. Defendant also argues that notice would be inappropriate because the proposed recipients are not class members; this argument has been disposed of by the discussion of class definition, *supra.* Defendant's first argument, however, merits further analysis.

The "opt-in" class suit authorized by 29 U.S.C. § 216(b), unlike true class actions under Fed.R.Civ.P. 23, does not fix the rights of absent parties. Thus, in a section 216(b) action, notification of the suit's pendency to all members of the defined class is not *required* by the due process clause. *Cf. Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

The absence of a notice requirement has led some courts to prohibit class notice in ADEA cases in order to avoid attorney solicitation:

> There are important policy considerations of ancient vintage which militate strongly against the giving of notice where not required by due process. The awakening of sleeping plaintiffs by either the plaintiff or the Court would fly in the teeth of the centuries-old doctrine against the solicitation of claims. While we sympathize with the plight of the unascertained number of potential plaintiffs who may be entirely unaware of their legal rights, we must not put our imprimatur on a procedure designed to stir up litigation. This statement is made only because we are unaware of any legal precedent or principle which supports the suggestion that either the plaintiff or the Court has

any moral, legal or ethical duty "to act as unsolicited champions of others."

*Roshto v. Chrysler Corp.,* 67 F.R.D. 28, 30 (E.D.La.1975). *Roshto* has been followed by several federal courts. *See Kinney Shoe Corp. v. Vorhes,* 564 F.2d 859 (9th Cir.1977); *Wagner v. Loew's Theatres, Inc.,* 76 F.R.D. 23 (M.D.N.C.1977); *McGinley v. Burroughs Corp.,* 407 F.Supp. 903 (E.D.Pa.1975). *But see, e.g., Frank v. Capital Cities Communications, Inc.,* 88 F.R.D. 674 (S.D.N.Y.1981).

The Supreme Court's progressive relaxation of impediments to attorney advertising has stripped *Roshto* and its progeny of their vitality. *Shapero v. Kentucky Bar Ass'n,* —— U.S. ——, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988), held that the First Amendment protects targeted, direct-mail solicitation of clients by lawyers so long as the solicitation is not false or misleading.

The Court reasoned:

> The court below disapproved petitioner's proposed letter solely because it targeted only persons who were "known to need [the] legal services" offered in his letter.... But the First Amendment does not permit a ban on certain speech merely because it is more efficient; the State may not constitutionally ban a particular letter on the theory that to mail it only to those whom it would most interest is somehow inherently objectionable....
>
> [M]erely because targeted, direct-mail solicitation presents lawyers with opportunities for isolated abuses or mistakes does not justify a total ban on that mode of protected commercial speech.

*Id.* 108 S.Ct. at 1922, 1923.

The rationale of *Shapero* is directly applicable to the form of notice that plaintiffs' counsel wish to send in this case. This Court sees no justification for restraining the right of plaintiffs' counsel to write letters to potential plaintiffs.[5] *Cf. Sperling v. Hoffman–LaRoche, Inc.,* 118

---

5. Defendant contends that because plaintiffs have already made substantial efforts to inform potential class members of this lawsuit, they should be precluded from issuing any further notice. Under 29 U.S.C. § 216(b), "[n]otice

need not be filed at the time the initial complaint is lodged. The opportunity to 'opt in' continues at least until a reasonable time prior to the trial of the case." *Wagner,* 76 F.R.D. at 24; *see also Roshto.*

F.R.D. 392, 403 (D.N.J.1988) (court may facilitate notice to ADEA class consistent with limits on attorney commercial speech). Furthermore, while it is clear that the court may *compel* class notice in an appropriate case, *Braunstein v. Eastern Photographic Laboratories,* 600 F.2d 335, 336 (2d Cir. 1978), no authority has been cited that requires prior *authorization* of the Court for such notice. The Court therefore declines to direct or prohibit the notice that plaintiffs' counsel wish to send.

SO ORDERED.