**John H. CHURCH Jr., et al., on behalf of himself and others similarly situated, Plaintiff,**

v.

**CONSOLIDATED FREIGHTWAYS, INC., et al., Defendants.**

**No. C–90–2290 DLJ.**

United States District Court, N.D. California.

April 12, 1991.

Elizabeth Joan Cabraser, Richard M. Heimann, and James M. Finberg, with the law firm Lieff, Cabraser & Heimann, San Francisco, Cal., Harris D. Butler and James C. Skilling, with the law firm of Williams, Butler & Pierce, Richmond, Va., Merrill G. Davidoff and Alan M. Sandals, with the law firm of Berger & Montague, Philadelphia, Pa., for plaintiffs.

Melvin R. Goldman, Michael L. Zigler, Alan Cope Johnston and Laura V. Best, with the law firm of Morrison & Foerster, San Francisco, Cal., for defendants.

## ORDER

JENSEN, District Judge.

### I. Introduction

Plaintiffs move this Court to facilitate notice to a proposed class of opt-in plaintiffs by approving the form of the Age Discrimination in Employment Act ("ADEA") plaintiffs' notice of their ADEA claim, authorizing the mailing of the notice to members of Subclass C, and ordering defendants to produce the names and addresses of Subclass C members so that notice may be sent.

Plaintiffs appear through counsel Elizabeth Joan Cabraser, Richard M. Heimann, James M. Finberg, Harris D. Butler, James C. Skilling, Merrill G. Davidoff and Alan M. Sandals. Defendants appear through counsel Melvin R. Goldman, Michael L. Zigler, Alan Cope Johnston and Laura V. Best.

## II. Background

Defendant Consolidated Freightways, Inc. ("CFI"), is a transportation company engaged in land, air and sea transport services. This action arises from events following CFI's April 1989 acquisition of Emery and its subsequent consolidation of Emery and CFI's subsidiary, CF Air Freight, Inc. ("CFAF"). The consolidated company began operation as "Emery Worldwide, a CF Company," in April 1989.

Before the acquisition and consolidation, CFAF was a small air freight service company. Emery was a considerably larger enterprise with nearly ten times the number of employees. *See* Defendants' Memorandum in Opposition to ADEA Plaintiffs' Motion for Approval of and Authorization to Send ADEA Notice at 3. After consolidation, the company encompassed five geographic areas, 23 divisions, and nearly 250 terminals, and had a combined exempt work force that exceeded several thousand employees. *Id.*

After the consolidation, six former Emery employees brought an action against defendants for violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, on behalf of themselves and others similarly situated. The former employees allege that defendants violated ADEA by implementing a single broad scheme designed to replace older, more experienced Emery exempt employees with younger, lower paid employees and to save the cost of paying severance benefits to the senior employees by—in anticipation of these terminations—reducing the maximum amount of severance allowable. Specifically, the plaintiffs allege that defendants adopted a policy of arbitrary preference of the younger former CF Air Freight employees and younger new hires over more experienced and more qualified, yet older Emery managers. *See* Plaintiffs' Memorandum in Support of Motion of ADEA Plaintiffs for Approval of ADEA Notice and Authorization to Send Notice to Potential ADEA Plaintiffs at 2. Plaintiffs allege that in anticipation of discharging the older Emery employees, on at least two different occasions in 1989 and 1990, defendants reduced the maximum severance benefits (initial reduction was from a maximum of 26 weeks of severance pay to a maximum of 13 weeks). *Id.* at 3, 5. Plaintiffs allege that age was a motivating factor in defendants' decision to discharge, constructively discharge, or force the resignation of hundreds of such older employees. *Id.* After the merger, plaintiffs allege that defendants, in implementing their plan, terminated hundreds, if not thousands, of older, experienced managerial employees of Emery and replaced them with younger, less experienced CF employees. *Id.* at 7.

Plaintiffs contend that employment decisions of Emery Worldwide were made at the highest level of the company. *Id.* at 6. Plaintiffs also maintain that computer records show that over 700 employees separated employment with Emery Worldwide between April 1, 1989, and December 31, 1989. *Id.* at 7. According to plaintiff, EEOC records indicate that over 100 different ADEA charges have been filed against defendants arising out of the unlawful conduct alleged in plaintiff's complaint, *id.*, and that six federal actions have been filed against defendants.

Defendants contend that the exempt employees over 40 years of age who left Emery Worldwide in 1989 were employed at 112 different locations in 74 different jobs and left employment on 103 different dates. *See* Defendants' Memorandum at 6. Defendants also contend that staffing decisions for the merged company were highly decentralized and that no directives mandating the retention or termination of specific employees or consideration of age were given. *Id.* at 3.

## III. Discussion

A. *This Court has authority to facilitate the notice process for class wide claims brought under ADEA.*

 Age discrimination in employment is forbidden by section 4 of the ADEA, 29 U.S.C. § 623. Section 626(b) of title 29 incorporates enforcement provisions of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and provides that the ADEA shall be enforced

using certain of the powers, remedies, and procedures of the FLSA. A special kind of "opt-in" class action may be brought under one of the FLSA incorporated provisions, 29 U.S.C. § 216(b), which provides for actions to recover damages resulting from a violations of the ADEA and states:

> An action to recover liability ... may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court which such action in brought.

29 U.S.C. § 216(b). Under this statutory authority, plaintiffs request this Court to facilitate notice to the proposed class, Subclass C, by approving the form of the ADEA plaintiffs' notice of their ADEA claim, authorizing the mailing of that notice to members of Subclass C, and ordering defendants to produce the names and addresses of Subclass C members so that the notice may be sent. Plaintiffs' proposed Subclass C is defined as follows:

> All persons age 40 and over who were exempt (or managerial) employees of Emery and whose employment terminated as a result of the reorganization of Emery Worldwide, by discharge, constructive discharge, forced resignation, or otherwise, during the period from April 6, 1989 through the present time.

Defendants oppose plaintiffs' motion on four grounds: first, "plaintiffs are inadequate ADEA representatives because none of them filed EEOC charges that contained class allegations"; second, "plaintiffs absolutely failed to make even a preliminary showing that a corporate-wide policy or practice discriminated against all members of the proposed ADEA class in a similar way"; third, "the class that plaintiffs propose to represent is undefined and unmanageable"; and fourth, "plaintiffs take positions and seek relief antagonistic to members of the ADEA class and to members of the various Rule 23 class they seek to represent ..." *See* Defendants' Memorandum at 1.

Although the governing statutes to do not expressly authorize court intervention in the notification process of ADEA class actions, the Supreme Court has recently held that court authorization and facilitation of the notice process of such actions, under certain circumstances, is proper, "if not necessary." *Hoffmann–La Roche Inc., v. Sperling,* 493 U.S. 165, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989). In *Sperling,* some 1,200 employees were discharged or demoted as a result of a company wide reduction in work force. *Id.,* 110 S.Ct. at 485. Sperling, and some other employees, filed an age discrimination charge with the Equal Employment Opportunity Commission for himself and all employees similarly situated. *Id.* Thereafter, Sperling and his fellow representatives filed an ADEA action in federal district court and requested court authorized discovery of and notice to the potential plaintiffs. *Id.* The district court held that it was "permissible for a court to facilitate notice of an ADEA suit to absent class members in appropriate cases, so long as the court avoids communicating to absent class members any encouragement to join the suit or any approval of the suit on its merits." *Id.* (*citing Sperling v. Hoffman–La Roche, Inc.,* 118 F.R.D. 392, 402 (N.J.1988)). The Third Circuit and the United States Supreme Court affirmed the district court's discretion without themselves reviewing the terms of the notice. *Id.* 110 S.Ct. at 486.

In its ruling, the Supreme Court emphasized that ADEA plaintiffs should have the opportunity to proceed collectively and that such collective action benefit the judicial system:

> Congress has stated its policy that ADEA plaintiffs should have the opportunity to proceed collectively. A collective action allows age discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and

fact arising from the same alleged discriminatory activity. *Id.* The Court then explained that the benefits of collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether or not to participate." *Id.* The Court observed that court approval and facilitation of notice will not only alleviate the potential for "misuse of the class device, as by misleading communications," but will also help serve the goals of "avoiding a multiplicity of duplicative suits and setting cut-off dates to expedite disposition of the action." *Id.*

The proposed class in *Sperling* was defined as follows:

All persons ... who were at any time from on or about January 1, 1985 to date: (a) over 40 but less than 70 years of age; (b) employed by HLR at any of its locations nationwide in a non-union position or a position not subject to a collective bargaining agreement; (c)(1) if any exempt employee (i) with an HLR salary grade level of 10 or above, or (ii) if below an HLR salary grade level of 10, with a base salary at or greater than the midpoint of such salary grade level, or (2) if a non-exempt employee, with a base annual salary of at least $20,000; (d) involuntarily discharged, laid off, terminated, downgraded or demoted from employment by HLR; (e) subjected to such adverse employment actions as described in (d) pursuant to or in connection with a staff reduction action and/or layoff implemented by HLR on or about February 4, 1985.

*Sperling,* 118 F.R.D. at 399–400.

Under *Sperling* this Court has the authority to facilitate notice to Subclass C as requested by plaintiffs. However, the Court must first determine if the named plaintiffs have complied with the procedural prerequisite to bringing a civil action on behalf of plaintiffs and others similarly situated. 29 U.S.C. § 626(d). Provided this hurdle is passed and the Court finds that the proposed opt-in plaintiffs are similarly situated, as defined by case law, to the named plaintiffs, the Court must then determine how the named plaintiffs define the scope of the proposed class. Specifically, the Court must determine how the named plaintiffs define the scope of the issues and claims and how the timing of the EEOC charges filed by the named plaintiffs prescribe the time limitation imposed on the proposed class.

B. *The EEOC charges of the named plaintiffs place the EEOC and defendants on notice of the class nature of the claims.*

In order to sustain a representative action under ADEA, the named plaintiffs must adhere to ADEA's prerequisites to a civil action. These procedures require the filing of a charge of discrimination with the EEOC within 180 days (or 300 days in deferral states) of the alleged act of discrimination. 29 U.S.C. § 626(d). The Ninth Circuit Court of Appeals has held that similarly situated individuals who may not have filed notice of intent to sue under section 626(d) may join in an action "so long as *a named Plaintiff* has complied with the notice requirement of 29 U.S.C. § 626(d) (emphasis added)." *Bean v. Crocker Nat. Bank,* 600 F.2d 754, 759 (9th Cir.1979).

Plaintiffs have, in part, met the standards required under section 626(d) in that five of the six named plaintiffs timely filed EEOC charges. Plaintiff Fennel admittedly filed no EEOC charge. *See* Defendants' Memorandum at 7 n. 5. Therefore, plaintiff Fennel is not a proper representative of the proposed class. This does not, however, preclude Fennel from becoming an opt-in plaintiff provided he falls within Subclass C.

Aside from a named plaintiff having timely filed with the EEOC, in order for non-filing individuals to opt-in the EEOC must have notice of the class nature of the claims. The purpose underlying the notice requirement under section 626(d) is to allow the EEOC to "promptly notify all persons named in such charge as prospective defendants in the action" and "promptly seek to

eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d). *See also Bean,* 600 F.2d at 760. Contrary to plaintiffs' assertion in its supplemental memorandum, the requirements of section 626(d) are not met by a named plaintiff's timely filed EEOC charge without more. In addition to a timely filed EEOC charge, the EEOC must have notice of the class nature of the claims alleged against the defendant so that the EEOC can attempt to fulfill the conciliatory purpose of section 626(d).

In *Naton v. Bank of California,* 649 F.2d 691 (9th Cir.1981), a case relied on by defendants, the court explained that in *Bean* "two or more of the complainants filed notice that they intended to bring an action on behalf of themselves and others similarly situated" and that this notice helped to satisfy the purpose of section 626(d) in that it put the Secretary of Labor and employers on notice of the class nature of the claims. *Id.* at 697. In contrast, plaintiff Naton's notice of intent to sue "expressed no intention to sue on behalf of anyone other than himself," and, therefore, did not fulfill the purpose of section 626(d). The court also noted, citing *Bean,* that no plaintiff had put the Secretary of Labor on notice that the discrimination charged involved a pattern of unlawful activity, transcending an individual claim. *Id.*[1] As evident from *Bean* and *Naton,* the EEOC must have notice of the class nature of the claims in order to fulfill the conciliatory function of section 626(d).

█ The question arises as to what exactly satisfies the notice requirement under section 626(d). Defendants contend that the allegations in the EEOC charges alone must serve to put the EEOC and defendants on notice of the class nature of the claims asserted against defendant. Specifically, defendants claim that the charges of the named plaintiffs do not purport to represent any class or group of similarly situ-

ated individuals, nor do the charges allege classwide discrimination against employees on the basis of age. *See* Defendants' Memorandum at 7. Plaintiffs' position is that, if the claims are not sufficient alone to give notice to the EEOC, other evidence shows that the EEOC in fact had notice.

Defendants' contention that the charge must expressly state that the claims are being brought on behalf of plaintiffs and "others similarly situated" is not persuasive. In *Walker v. Mountain States Tel. & Tel. Co.,* 112 F.R.D. 44 (D.Colo.1986) the court stated that although the age discrimination charge did not specify that it was being brought on behalf of individual claimants and "all others similarly situated," the charge filed with the EEOC was sufficient to give notice that others allegedly were being discriminated against where the charge stated, "I have reason to believe that many older employees who were near retirement were forced to retire at same time and in months following complainant's retirement. *Id.* at 46. In *Anderson v. Montgomery Ward & Co., Inc.,* 852 F.2d 1008 (7th Cir.1988), the court held that the explicit mention that a complainant intends to represent himself or others similarly situated is not necessary. *Id.* at 1017. The court stated that the notice requirement was met where 27 charges contained "plain allegations of class-based discrimination" as, for example, the charge of Anderson which stated, "I believe Respondent's efforts have been to eliminate older employees and replace them with younger employees." *Id.* at 1017, 1010 n. 3. The court also noted that "some of the charges mention names of other employees who also allegedly had been discriminated against." *Id.* at 1010. This Court is persuaded that an EEOC charge does not have to contain language which states a claim is brought on behalf of claimant and "all others similarly situated."

In its ruling the court distinguished *Bean* by explaining that in *Bean* at least one plaintiff had timely filed an EEOC charge. *Naton v. Bank of California,* 649 F.2d at 697.

---

1. The court's decision to affirm the dismissal of claims brought on behalf of a class of "opt-ins" was also based on the fact that Naton, the only named plaintiff, failed to file a timely notice of intent to sue as required by 29 U.S.C. § 626(d).

In this case at least two charges by named plaintiffs, that of Mr. Edward Craft and of Mr. Jerold Polt, serve to put the EEOC and defendants on notice of the class-based nature of the discrimination even though neither is purported to be brought on "behalf of others similarly situated." Plaintiff Craft's EEOC charge stated that "the company preferred younger managers" and that "younger managers were transferred to other positions rather than discharged." *See* Declaration of Zinkin in Support of Defendant's Opposition to ADEA Plaintiffs' Motion for Approval of and Authorization to Send ADEA Notice, Exhibit 8. Similar to the allegations in *Walker* and *Anderson*, the allegations here alert the EEOC and defendants that the "discrimination charged involved a pattern of unlawful activity, transcending an individual claim." *Naton*, 649 F.2d at 697. Plaintiff Polt's EEOC charge stated that his position was eliminated "as was the other Quality Assurance Auditor position and the Director of Quality Assurance position." *See* Declaration of Zinkin, Exhibit 12. Polt alleged that "the other persons whose Quality Assurance positions were eliminated were also over 40." *Id.* Polt also stated that other positions for which he applied "were given to younger candidates." *Id.* As with Craft's charge, Polt's charge should have alerted the EEOC that the claimed discrimination transcended an individual claim. Here, Polt specifically states that other positions held by people over 40 were also eliminated.

In addition to the charges, accompanying affidavits further served to alert the EEOC of the class nature of the claims alleged. However, defendant contends that the notice must come exclusively from the charge without reference to affidavits or other evidence. This contention ignores the function of the notice requirement which is to alert the EEOC of the class nature of the claims so that it can begin the informal conciliation process between the parties and seek to eliminate the discriminatory practice. 29 U.S.C. § 626(d). The method from which the EEOC receives notice should not serve to defeat a classwide claim of discrimination; rather, it should

suffice that the EEOC has notice from the charge or notice in fact, however received, so that it can begin the conciliation process. Even though both the *Bean* and *Naton* courts discussed whether or not the EEOC had notice by referring to the allegations in the charges, neither case expressly required that the notice derive exclusively from the allegations in the EEOC charges. In *Walker*, 112 F.R.D. 44, the court held that the EEOC could have attempted conciliation of the dispute between defendants and other employees based upon the information in the charge *and* the *affidavit* which stated that the claimant discussed the matter of age discrimination against other managers at the first and second levels with the EEOC personnel who processed his claim.

With this in mind, we turn to the affidavits accompanying the EEOC charges. Craft's affidavit states that "[a]fter the merger, younger salespeople from CF took over the terminal manager positions." More, generally it states that "the older management people are being terminated (or waiting to see what will happen with ... them)." In addition, Craft states "I have become aware through conversations with John Church that he has filed a charge with EEOC's Charlotte District office making allegations similar to mine." *See* Supplemental Declaration of Finberg in Support of Plaintiffs' Motion for Approval of ADEA Notice and Authorization to Send Notice to Potential ADEA Plaintiffs, Exhibit E. The affidavit of named plaintiff Raymond Diggs also refers to other similarly situated individuals, including statements referring to the following people, "Don Statton, Houston, Tx., age late 40's took a lesser position, also, Paul Wolfrum, age 50, The Hub, Dayton, Ohio was terminated." *See* Supplemental Declaration of Finberg, Exhibit F. These affidavits serve to bolster this Court's conclusion that the EEOC had sufficient notice of the classwide nature of the claims asserted against it.

Plaintiffs' presented other evidence to support a finding that the EEOC was aware of the group nature of the claims.

For example, a memorandum from the EEOC investigator handling Craft's claims states:

In speaking with the Charging Party, Edward Craft, regarding witness information he states that John Church advised him that he had filed EEOC charges against the Respondent in Charlottesville. Mr. Craft insists that a large number of other older management people have filed against Emery with similar complaints of age discrimination. It appears that if this is so it needs to be checked out and be handled under our investigator. Please advice.

*See* Finberg Reply Decl., Exhibit E. In addition, Mr. Craft's appeal to the Determination Review Program of the EEOC emphasized that his claim was one of a "number of separate but related claims." *Id.,* Exhibit F. Plaintiffs also point out that at least 29 EEOC charges and 6 federal civil actions have been filed to date by exempt employees falling within Subclass C. *See* Supplemental Memorandum at 6–7. Despite this evidence, defendant points out that the EEOC treated both Craft's and Polt's charges as individual claims and the EEOC did not attempt to conciliate on behalf of a class. *See* Defendants' Supplemental Memorandum at 5–6. The Court is not persuaded by this argument. As the Ninth Circuit held in *Albano v. Schering–Plough Corp.,* 912 F.2d 384 (9th Cir.1990), the EEOC's failure to investigate and conciliate cannot be held against the individual (or the class he represents). What controls is that the EEOC be given an opportunity, not that the EEOC use that opportunity. *See Oglesby v. Coca–Cola Bottling Co.,* 620 F.Supp. 1336, 1344 (N.D.Ill.1985); *Schnellbaecher v. Baskin Clothing Co.,* 887 F.2d 124, 127 (7th Cir.1989) ("[A] limited EEOC investigation will not necessarily defeat a complaint where the complaint contains allegations like or reasonably related to the EEOC charge, but which the EEOC failed to investigate.").

Although the evidence outside of the charge is persuasive of the fact that the EEOC knew the nature of the claims, the Court believes that Craft and Polt's EEOC charges, including Craft's affidavit, are sufficient to notify the EEOC of the group nature of the charges asserted against defendants, thus, satisfying the requirements of section 626(b).

*C. Plaintiffs have made a sufficient showing that Subclass C is similarly situated to the named plaintiffs.*

In *Sperling,* the district court stated that plaintiffs' allegations described a "single decision, policy, or plan" of age discrimination that "had led to the termination or demotion of every member of the class." *Id.* at 406. The Court found that plaintiffs' allegations were sufficient to show that the proposed class was similarly situated since the allegations in the pleadings were "detailed" and plaintiff "had supported those allegations with affidavits which successfully engage defendant's affidavits to the contrary." *Sperling,* 118 F.R.D. at 406. In discussing the standard for "less than a final decision on the 'similarly situated' issue," the district court explained, "I do not mean to intimate that the ultimate burdens plaintiffs must sustain on that issue are heavy, or that significant discovery must be undertaken to sustain them." *Id.* at 407. The court noted that "nothing would appear to prevent a court from modifying or reversing a decision on 'similar situations' at a later time in an action, as new facts emerge." *Id.* "Putting these perceptions aside," the court found that "in any event" plaintiffs had "made a sufficient showing on the similarly situated issue to merit court-facilitated notice at this time in the action." *Id.* at 407.

The court stated that, in general, the standards governing a conclusive finding of "similar situations" "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." *Id.*

Defendants contend that in contrast to *Sperling,* plaintiffs have offered only unsupported assertions that putative class members were the victims of a single decision, policy, or plan infected by age discrimination. Plaintiffs assert that they have not had an opportunity to conduct

merits discovery regarding their allegations that defendants embarked upon a common scheme or plan to replace older Emery employees with younger CF employees and to deprive older employees of severance benefits. *See* Plaintiffs' Memorandum at 15. However, plaintiff asserts that the "complaint's allegations and the deposition, documentary and declaratory evidence" concerning defendants' policies and practices justify a preliminary determination on the similarly situated issue. *Id.* Plaintiffs support their assertion that defendants had a planned series of reductions in work force throughout 1989 and possibly continuing into 1991 by reference to a document produced by CFI's investment banker. *See* Finberg Decl., Exhibit K, para. 12. This document describes cost savings that CF anticipated as a result of Emery Worldwide payroll reduction and terminations of employees. However, this document does not mention age as a factor in any planned terminations. The numerous other allegations in the complaint and accompanying declarations, however, do tend to show that the terminations which are alleged to be in furtherance of a preconceived plan, were in part based on age. *See* Plaintiffs' Memorandum at 5–8. Therefore, as in *Sperling,* plaintiffs' allegations and declarations support a preliminary determination that the proposed opt-in plaintiffs are similarly situated.

1. *The requirements of class actions under Rule 23 of the Federal Rules of Civil Procedure should not be invoked to impede plaintiffs' opportunity to bring an ADEA class action.*

 Defendants nevertheless contend that in determining the scope of the proposed class, the Court cannot simply rely on a definition of similarly situated; rather, the Court must consider the factors under Rule 23 of the Federal Rules of Civil Procedure in determining manageability of the class and appropriateness of the representatives. In support of this argument defendants cite *Shushan v. The University of Colorado,* 132 F.R.D. 263 (D.Colo.1990), which held that before a preliminary determination on the scope of a class can be made plaintiffs need to show that the requirements of Rule 23 are met or that the particular requirement is inconsistent with 29 U.S.C. § 216(b). *Shushan,* 132 F.R.D. at 268. The court in *Shushan* believed that this holding was consistent with *Sperling* in that *Sperling* emphasized the court's "requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* at 267–68, (*citing Sperling,* 110 S.Ct. at 486.) The court stated, "I cannot see why the district courts should fail to utilize existing procedures, embodied in rule 23, which are designed to promote effective management, prevent potential abuse, and protect the rights of all parties." *Id.* at 268. In its decision to deny plaintiffs' discovery of the names and addresses of class members and court authorized notice, the court stated:

> I cannot accept the extraordinary assertion that an aggrieved party can file a complaint, claiming to represent a class whose preliminary scope is defined by him, and by that act alone obtain a court order which conditionally determines the parameters of the potential class and requires discovery concerning the members of the class.

*Id.* at 268. The plaintiff in *Shushan* made no showing in compliance with Rule 23 of numerosity, typicality, adequacy, etc., and, therefore, no "conditional determination" on the issue of similar situations was made. *Id.*

Plaintiffs contend that *Shushan* is an anomaly and that other courts have determined that Rule 23's prerequisites do not apply to a proceeding under the FLSA. *See, e.g., Partlow v. Jewish Orphans' Home,* 645 F.2d 757, 758 (9th Cir.1981); *Kinney Show Corp. v. Vorhes,* 564 F.2d 859 (9th Cir.1977). The district court in *Sperling,* addressing this issue, noted that in most federal class actions joinder and notice to potential class members are governed by Rule 23, whereas ADEA class claims are governed by the "powers, remedies, and procedures" of the FLSA. *Sperling,* 118 F.R.D. at 399. In light of this

distinction, the court stated, "Thus, it has generally been held that ADEA class actions may proceed under 29 U.S.C. § 216(b) only, and not under Rule 23." *Id.* Rather than invoking Rule 23's prerequisites, the district court in *Sperling* defined the term "similarly situated" as "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by age discrimination." *Sperling*, 118 F.R.D. at 407. Additionally, as plaintiffs argue, converting the similarly situated standard into Rule 23's requirements would likely impede plaintiffs' opportunity to proceed collectively. *See Heagney v. European American Bank*, 122 F.R.D. 125, 127 n. 2 (E.D.N.Y.1988) ("[T]he similarly situated requirement of 29 U.S.C. § 216(b) is considerably less stringent than the requirement of Fed.R.Civ.Proc. 23(b)(3) that common questions predominate.").[2]

In *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, the Ninth Circuit reversed a district court's order permitting the sending of notice to potential opt-in plaintiff's under the procedures of FLSA, 29 U.S.C. § 216(b) and vacated the order requiring defendants to produce the names and addresses of employees.[3] There the court noted:

> [T]he question of the applicability of Rule 23 doctrine to § 216(b) cases also arises in suits under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634, by virtue of the provisions that the ADEA shall be enforced under § 216(b). 29 U.S.C. § 626(b).
>
> The clear weight of authority holds that Rule 23 procedures are inappropriate for the prosecution of class actions under 216(b). [citations omitted] At least two circuits have held that Rule 23 and § 216(b) class actions are "mutually exclusive" and "irreconcilable." *See Schmidt v. Fuller Brush Co.*, 527 F.2d 532, 536 (8th Cir.1975); *LaChapelle v.*

*Owens–Illinois, Inc.*, 513 F.2d 286, 289 (5th Cir.1975).

*Id.* at 862.

While recognizing that several courts have held Rule 23's procedures for bringing a class action are inapplicable to section 216(b) actions, the *Shushan* court discussed several reasons why it was not persuaded that Rule 23 was inapplicable. The *Shushan* court explained that several of the cases that hold Rule 23 inapplicable to section 216(b) actions do so based on the distinction between the opt-out procedures of Rule 23, where class members who do not take steps to opt-out of the litigation are bound by the judgment which is res judicata, and the opt-in features of section 216(b), where class members who do not file a written consent are not bound by the judgement. *See, e.g., Kinney*, 564 F.2d 859. The court stated that although the opt-out and opt-in features are "irreconcilable," "it does not necessarily follow that every other feature of rule 23 is wholly inapplicable." *Shushan*, 132 F.R.D. at 266. The court presented two arguments criticizing the rationale that since section 216(b) binds only those who opt-in to the proceeding, the protection of Rule 23 is unnecessary. First, the court argued that the procedures of Rule 23 are designed not only to protect the class members, but also to facilitate management of the litigation. For example, the court stated that Rule 23(a)(2)'s requirement that common questions of law or fact predominate over any questions affecting only individual members has "little to do with protection of class rights and much to do with handling the lawsuit effectively." *Id.* at 267. Second, the court argued that the fact that class members must file a written consent before they are bound by a judgment does not lessen the responsibility of the court to protect the interests of the class members

---

**2.** In *Heagney* the court also stated, "Section 216(b) displaces the class action devices of Fed. R.Civ.P. 23, which are accordingly unavailable in an ADEA case." *Heagney*, 122 F.R.D. at 127, n. 1.

**3.** Although the United States Supreme Court's ruling in *Sperling* has overruled this portion of

*Kinney*, the remainder of the case is left intact. *See, e.g., E.E.O.C. v. Pan American World Airways, Inc.*, 897 F.2d 1499, 1508 n. 11. (9th Cir. 1990) (where court cites *Kinney* for the proposition that plaintiffs who do not "opt-in" to a class action under section 612(b) are not precluded from bringing subsequent private action).

by invoking Rule 23's procedures. The court explained that "the person who merely files his written consent should not be expected fully to appreciate actual or potential conflicts between himself and the class representatives ..." *Id.* Thus, the court argued Rule 23(a)(4)'s requirement that the representative will fully and adequately protect the interests of class members should be enforced.

The arguments presented in *Shushan* are well taken, and the Court agrees that some of Rule 23's procedures may be helpful in the management of an ADEA class action. The Court does not, however, agree with the *Shushan* holding that named plaintiffs in ADEA actions must show that all of Rule 23's procedures are met or are inconsistent with section 216(d) before a court can facilitate notice to a proposed class, as requested here. The Court is not persuaded that in *Sperling* the Supreme Court's discussion of a court's managerial responsibilities of joining multiple parties was intended to invoke, verbatim, the procedures of Rule 23 into all ADEA action brought under section 216(b). Such a reading of *Sperling* contradicts the district court's statement that "ADEA class actions may proceed under 29 U.S.C. § 216(b) only, and not under Rule 23." *Sperling,* 118 F.R.D. at 399. More importantly, such a requirement would impede ADEA plaintiffs' opportunity to proceed collectively and, therefore, is contrary to the broad remedial purposes of prohibiting arbitrary age discrimination. *See, e.g., Bean,* 600 F.2d at 759. For example, the Court agrees with plaintiffs that requiring ADEA plaintiffs to show that common questions of law or fact predominate over questions affecting only individual members under Rule 23(b)(3) is far more stringent a test than the similarly situated requirement under section 216(b). Because, ADEA is a remedial statute which is to be liberally construed in light of its purpose, *see Bean,* 600 F.2d at 759, the Court believes that ADEA plaintiffs, at least at this stage of the litigation, should not have to show that common questions of law or fact predominate over individual questions. In any event, the protections afforded by the requirement that common questions of law or fact predominate is largely served by the opt-in features of 216(b). This is because opt-in plaintiffs have presumably decided that the benefits of proceeding as a class member outweigh any benefits of bringing an individual action where claims that predominate over class claims may be pursued. Rule 23's requirements of commonality and typicality are largely served by section 216(b)'s requirement that the class members be similarly situated to the named plaintiffs in that each is alleged to have been the victim of "a single decision, policy, or plan infected by discrimination." *Sperling* 118 F.R.D. at 407. In this case Rule 23's requirement of numerosity is met, and the Court believes application of this requirement adds to the efficiency and judicial economy served by class actions under ADEA, without impeding the right to bring these actions.

Rule 23's requirement that the representatives will fairly and adequately protect the interests of the class should be considered; however, the protections of Rule 23(a)(4) are not as crucial here because a judgment stemming from a class action does not bind a class member unless that member filed a written consent to join the action. Because they are not bound unless they join, they are in less need of Rule 23's protection than opt-out plaintiffs who are bound unless they take affirmative steps with the court to sever themselves from the class. Defendants argue that three conflicts render the named plaintiffs inadequate representatives: first, since plaintiffs seek reinstatement they would jeopardize the positions held by current employees who may be members of other classes; second, since plaintiffs seek to reinstate severance pay to its premerger level they may jeopardize medical and other benefits enjoyed by current employees; and third, since plaintiffs assert that layoffs should have been made in reverse order of seniority, those employees who were more qualified or more valuable or less senior will be adversely effected. The first two arguments are not applicable since the issue is whether the named representatives will fairly and adequately

represent the interests of the class, and here, Subclass C is composed of former employees not current employees. As plaintiffs point out, defendants' third argument misstates plaintiffs interpretation of the Emery Policy. *See* Plaintiff's Rely Memorandum at 22–23. Plaintiffs allege that the layoffs were in order of reverse seniority, "provided that the most senior employee has demonstrated skill to perform the work." *Id.* at 23. In addition, those class members who feel that the contentions asserted by named plaintiffs would adversely affect them may decide to bring their own action rather than opt-in to the class action. The Court believes that the conflicts argued by defendants are not sufficient enough to prevent court facilitation of the notice process.

2. *Subclass C is not unmanageable and dissimilar.*

■■■■ As explained above, this Court believes that at this stage plaintiffs have made a sufficient enough showing that Subclass C is similarly situated to the named plaintiffs to warrant court facilitated notice. Defendants, however, contend that notice to the proposed class is not proper because the class is unmanageable and dissimilar. Defendants cite *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J.1987), *vacated in part and modified in part on other grounds*, 122 F.R.D. 463 (D.N.J.1988) in support of this argument. In *Lusardi* the court decertified an ADEA class after it had conditionally certified the class four years earlier and 1,312 plaintiffs opted into the class. The initial class that was certified included all salaried employees age 40 to 70 who were terminated, forced to retire, or otherwise denied employment opportunities during a three-year period. In holding that the class was not similarly situated, the court noted:

> Because it appears the members of the proposed class come from different departments, groups, organizations, suborganizations, units and local offices, as well as different subsidiaries of Xerox, performed different jobs at different geographic locations, were the subject of different job actions concerning reduc-

tions in the Xerox work force (including resignation, promotions, terminations for cause, etc.) which occurred at various times as a result of *decisions by different supervisors made on a decentralized employee-by-employee basis*, plaintiffs are not similarly situated.

*Id.* at 352 (emphasis added). In reaching its decision the court cited "serious questions" as to the "fairness, manageability and meaningfulness" of what would amount to "1,325 separate trials."

Despite the holding in *Lusardi*, the rationale does not directly support the contention that court facilitation of notice would be improper. Rather, as evidenced by the court's previous conditional certification, court facilitation of notice is proper but does not preclude a later determination that the class is not similarly situated. In this respect, the holding in *Lusardi* is in accord with the district court in *Sperling* which explained that preliminary certification through court approval of notice and facilitation of notice does not preclude a later determination that the class is not similarly situated. *Sperling*, 118 F.R.D. at 407. Moreover, the court in *Lusardi* only reached its decision after extensive merit discovery was conducted. *Lusardi*, 118 F.R.D. at 354. In contrast to *Lusardi*, this Court does not have before it the benefit of evidence obtained by extensive merit discovery. And, similar to *Lusardi*, the plaintiffs should have the benefit of court facilitated notice and conditional approval of the proposed class.

Plaintiffs also point out that there are numerous factual distinctions from the situation presented in *Lusardi*. For example, here plaintiffs have made allegations supported by declarations that the decision making process was highly centralized, unlike that in *Lusardi*. Also, plaintiffs persuasively argue that the broad and uniform impact of the defendants actions should not mitigate against a courts decision to facilitate notice. In *Heagney v. European American Bank*, 122 F.R.D. 125, the court explained that "class treatment under the ADEA is not defeated simply because ... the plaintiffs performed a variety of jobs in

a number of departments at different locations." *Id.* at 127. Similarly, Subclass C should not be deprived of their right to opt-in to the action simply because they held a variety of different jobs at different locations. The procedural mechanisms by which proposed opt-in plaintiffs left employment, i.e., job elimination, demotion, layoff, discharge, etc., should also not defeat their claim. *See id.* at 128.

At this stage, plaintiffs have made a sufficient showing that the proposed class is similarly situated and the fact that individuals in the class are located in different areas, had different jobs, and left for different reasons should not preclude court facilitation of the notice process. When this Court is confronted with the issue of final approval of the class those considerations must and will be reviewed in light of increased knowledge of relevant facts. Also, when and if the Court reaches the issue of class approval it will likely have more detailed information on the opt-in plaintiffs to make its determination. At this stage, conditional approval of the class and court facilitated notice is appropriate.

D. *Defendants' argument that the policies identified by plaintiff are insufficient to raise an inference of age discrimination are premature.*

■ For various reasons, defendants argue that the policies identified by plaintiffs as demonstrating defendants' violation of ADEA are insufficient to raise an inference of age discrimination. The authority presented by defendants, however, should not determine whether court facilitation of the notice process should be granted. Rather, as plaintiffs point out, the defendants arguments and authority presented in support suggest that this Court should make a factual determination on the alleged conduct of defendant at this early stage. Such a determination without the benefit of full merit discovery is unwarranted at this point.

E. *The proposed scope of Subclass C is defined by named plaintiffs in the following respects.*

At the hearing on March 6, 1991, the Court requested that the parties file simultaneous briefs on the two following issues: one, how the EEOC charges of named plaintiffs define the scope of the class; and two, how the filing date of each charge defines the scope of the class. After reviewing the briefs submitted and the relevant law, the Court reaches the following determination.

■ Defendants assert that the Court must limit the class of individuals to whom notice is sent to those who could raise the same claims as those of named plaintiffs Polt and Craft. Specifically, defendants assert that since Craft's charge claims he was eliminated from the position of Regional Control Analyst Manager he may only represent other Regional Control Analyst Managers. And, since Polt's charge refers only to two Quality Assurance Auditors whose positions, like his, were eliminated, he may only represent those who held similar positions. Further, defendants contend that "Craft and Polt can only represent those employees commonly affected by the policies that affected them and which were raised in their EEOC charges." *See* Defendants' Supplemental Memorandum at 10. Since Craft and Polt did not allege that they were discriminated against by defendants' severance and seniority policy, defendants argue that they can not represent those that were.

Although support for defendants' arguments can be found, *see, e.g., Walker v. Mountain States Tel. & Tel. Co.,* 112 F.R.D. 44 (D.Colo.1986), the Court believes the better view is that a class claim is not defeated simply because the proposed class performed a variety of different jobs at different locations, reported to different supervisors or left employment for different reasons than the named plaintiffs. What governs the scope of the class is whether the named plaintiffs and the class members were all affected by a similar plan infected by discrimination. "The plaintiffs need not be identically situated to potential class members." *Heagney,* 122 F.R.D. at 127. As explained above, the court in *Heagney* held that class treatment under ADEA was not defeated "simply because, as here, the plaintiffs performed a variety of jobs in a

number of departments at different location." *Id.* The court also stated that the various reasons why class members left employment did not preclude their joining the class. The court reasoned:

> To deny class treatment would be tantamount to declaring that any employer can escape ADEA class liability so long as it discriminates against a diverse group of people over a wide geographic range in a number of ways, such as termination, salary, promotions, and working conditions."

*Id.* (quoting, *Allen v. Marshall Field & Co.*, 93 F.R.D. 438, 443 (N.D.Ill.1982)). This Court is persuaded by the reasoning in *Heagney.*

■■■■ Also, the types of claims or discriminatory policies at issue in the EEOC charges do not necessarily circumscribe those in a later class action. As the Ninth Circuit in *Albano v. Schering–Plough Corp.*, 912 F.2d 384 (9th Cir.1990), stated, "[c]laims regarding incidents not listed in an EEOC charge may nevertheless be asserted in a civil action if they are like or reasonably related to the allegations of the EEOC charge." *Id.* at 386. In *Albano* the court held that since the EEOC was at fault for failing to adequately investigate complainants' claims of constructive discharge a civil action could encompass claims of constructive discharge even though not reasonably related to the claim of failure to promote asserted in the EEOC charge. *Id.* at 388.

This Court believes that the claims in the complaint and discriminatory policies alleged are reasonably related to the claims alleged in Polt's and Craft's EEOC charge. For example, Craft's charge alleged that "the company preferred younger managers." His EEOC affidavit states, "older management people are being terminated...." The complaint alleges the defendants adopted a policy of arbitrary preference of the younger former CF Air Freight employees and younger new hires over more experienced and more qualified, yet older Emery managers. *See* Plaintiff's Memorandum at 2. The complaint also alleges that the defendants reduced sever-

ance benefits in anticipation of terminating older Emery employees. *Id.* at 3, 5. Although, this claim is not asserted in Polt's or Craft's EEOC charge, it is reasonably related to the allegations regarding layoffs of older employees, and seems to be related to an overall scheme to reduce costs by eliminating those employees with high severance benefits, who plaintiffs claim are primarily older employees. Therefore, the scope of the class to whom notice may be sent is not limited per se by the type of claims asserted and the positions held by Polt and Craft.

■■■ The timing of Polt's and Craft's EEOC charge, however, does limit the scope of the class. In *Walker v. Mountain States Tel. & Tel. Co.*, 112 F.R.D. 44, 47, the court stated:

> A named plaintiff in a section 216(b) class action may represent only those similarly situated individuals who either have filed timely charges with the EEOC or who could have filed a timely charge on the same date as the named plaintiff.

In order to be timely, an EEOC charge must be filed within 180 days (or 300 days in deferral states) of the alleged act of discrimination. 29 U.S.C. § 626(d)(1). To determine whether the 180–day or 300–day limit applies, the Court must look to the state in which each potential opt-in resides. *Walker*, 112 F.R.D. at 47. In holding that the scope of the class is limited by the filing dates of the EEOC charges, the Court recognizes that case law exists which supports the theory that opt-in plaintiffs who did not or could not timely file, nevertheless, could piggyback on to those claims which were timely filed. *See, e.g., Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008 (7th Cir.1988). This Court, however, believes that the proper conclusion is one that prevents the resurrection of claims which could not be brought because they were not filed on time. Under this view, the earliest filed EEOC charge is that of Craft, which was filed on June 23, 1989. Therefore, to be considered in the class, the alleged act of discrimination must have taken place on or after December 26, 1988, for those opt-ins

who reside in states with a 180–day filing period; or, on or after August 29, 1988, for those opt-ins who reside in deferral states with a 300–day filing period.

■■■ Contrary to defendants' assertion, under the facts in this case the latest date upon which potential plaintiffs may file is not circumscribed by the date of the named plaintiffs' charge. Although the court in *Walker* held that the latest date upon which a potential class member must have been able to file is defined by the date of the last filed EEOC charge, this Court believes that this rule is not applicable where acts of ongoing discrimination in furtherance of an earlier implemented plan are alleged. As the Ninth Circuit recognized in *Oubichon v. North American Rockwell Corp.*, 482 F.2d 569 (9th Cir.1973), later incidents growing out of earlier events on which an EEOC charge is based can properly be part of a civil complaint arising out of the EEOC charge or charges. Also, in *Levine v. Bryant*, 700 F.Supp. 949 (N.D.Ill. 1988), the Northern District of Illinois held that ADEA plaintiffs who had been discriminated against after the first EEOC charges had been filed could piggyback onto earlier charges, even though they could not have filed with the EEOC at the time of the earlier charges. *Id.* at 957. Because, the discrimination alleged in the complaint is ongoing and allegedly has affected people falling within Subclass C, even after the date of the EEOC charges, the Court holds that those Subclass C members affected by defendants alleged discriminatory policies and practice up until the present date may be sent notice of the class action.

### IV. Conclusion

For the foregoing reasons, the Court hereby rules that of the named plaintiffs only Polt and Craft met the requirements under 29 U.S.C. section 626(d) and are, therefore, qualified to represent Subclass C. The Court further rules:

1. Plaintiffs' request for discovery of the names and addressed of individuals falling within Subclass C is GRANTED;

2. Plaintiffs' request that the Court authorize notice of the ADEA claim to members of plaintiffs' proposed Subclass C is GRANTED; however, plaintiffs are hereby ordered to submit a revised form of notice to conform with this order, and which limits the scope of the proposed class in the manner herein set forth within 10 days of the filing of this order.

IT IS SO ORDERED.